**In re Donald E. WILKES, an attorney, Petitioner-Appellant.**

**No. 72-1399.**

United States Court of Appeals, Fifth Circuit.

May 23, 1974.

William H. Maness, Jacksonville, Fla., for petitioner-appellant.

Robert W. Rust, U. S. Atty., Harold F. Keefe, Asst. U. S. Atty., Miami, Fla., Marshall R. Cassedy, Executive Director, The Florida Bar, Tallahassee, Fla., Robert Bryne, Asst. U. S. Atty., Miami, Fla., Patrick A. Podsaid, Asst. Staff Counsel, The Florida Bar, Miami, Fla., Harry G. Carratt, Fort Lauderdale, Fla., Paul B. DeWitt, Executive Director, Assn. of the Bar of the City of N. Y., New York City, for respondents-appellees.

Before WISDOM and GOLDBERG, Circuit Judges, and LYNNE, Senior District Judge.

WISDOM, Circuit Judge:

Donald E. Wilkes, the movant-appellant, brings this appeal from the judgment of the district court dismissing his "Motion to Confirm Credentials to Practice Before the Courts of the Southern District" of Florida. We reverse and remand for a hearing on the allegations contained in Wilkes's motion.

I.

Wilkes was admitted to the Bar of Florida in 1950. He was also a member of the New York Bar. In 1960 the New York Supreme Court, Appellate Division, disbarred Wilkes upon the recommendation of a referee appointed by the Grievance Committee of the Bar Association of the City of New York. The referee found that Wilkes was guilty on three charges of violating the professional Canons. The Florida Supreme Court summarized the findings in New York:

In its order of disbarment the New York court found the respondent guilty of (1) violating the terms of an escrow agreement 'by misappropriating funds which rightfully belonged to his client,' (2) misadvising a 'client as to the validity of a Mexican ex parte divorce,' and (3) violating Canon 9, Canons of Professional Ethics, Judiciary Law, Appendix, 'by directly communicating with a party represented by counsel in an attempt to influence a favorable settlement of a personal injury action.' Although respondent was not charged therewith the New York court found that respondent failed to appear in that proceeding and had apparently abandoned his law practice.

The Florida Bar v. Wilkes, 199 So.2d 472, 473 (Fla.1967).

In 1963 the Florida Bar Association commenced proceedings to disbar Wilkes in Florida, based upon the New York adjudication that Wilkes had been guilty of misconduct. The Florida Supreme Court rejected the first judgment of the Florida Bar Association's Board of Governors recommending Wilkes's disbarment and remanded the case with directions that it be returned to the referee, appointed by the Association, for reconsideration and recommendation as to the discipline to be imposed on Wilkes for the misconduct of which he was found guilty in New York as charged. The Florida Bar v. Wilkes, 179 So.2d 193 (Fla.1965). The Court "concluded that neither comity nor the full faith and credit provision requires that the judgment in New York result in disbarment" in Florida. Id. at 196. The Court held, however, that under Rule 11.02(6) of the Florida Integration Rule, 32 F.S.A., the New York judgment operated as "conclusive proof of guilt of the acts of misconduct adjudicated in that judg-

ment, but that the discipline to be awarded for such acts by this state shall be determined by this Court and its agencies in the same manner as in all other disciplinary proceedings".

Although the referee had based his recommendation primarily on the conduct adjudicated in New York, he had also relied upon Wilkes's belief in existentialism as a further ground for holding him unfit to practice. The Florida Supreme Court did not allow this aberration to pass unnoticed. The Court declared: "Neither respondent's testimony, the 'flyer' or any other portion of the record supports the referee's conclusion that the existentialist philosophy is repugnant to the reputable practice of law, or that respondent's belief in or practice thereof renders him unfit to practice law. Mere belief in an unorthodox philosophy does not in itself make one unfit to practice law. . . ." The referee had also noted the absence of any testimony by Wilkes as to church, civic, and social affiliations. The Court considered that this mention required it to say that "while evidence of such activities may be offered by an accused to demonstrate moral fitness, lack of evidence thereof may not be considered as negating fitness to practice or moral character".

Upon remand, without any further hearings, the referee reconsidered the entire record, including that of the New York proceedings, and found that Wilkes should be disciplined in Florida for only two of the acts of misconduct (charges 1 and 3) adjudicated in New York. The Board of Governors approved the referee's recommendation of disbarment for five years, retroactive to the date of the filing of the Florida complaint.

In 1967 the Florida Supreme Court affirmed the findings of guilt on the two charges, but on the facts of the case, concluded that disbarment for five years was not necessary to accomplish the purpose of the disciplinary action. The Florida Bar Association v. Wilkes, 199 So.2d 473 (Fla.1967). The Court noted that the acts complained of had taken place in 1958 or 1959; an adequate period of time had elapsed for the Florida Bar and the court to determine whether Wilkes had rehabilitated himself and could be reinstated as a member of the Bar "without endangering the public interest or the face of the legal profession". Accordingly the Court suspended Wilkes until such time as he should demonstrate to the Florida Bar and the court that he should be reinstated to practice law. The United States Supreme Court denied certiorari from the judgment of the Florida Supreme Court. Wilkes v. Florida Bar, 1968, 390 U.S. 983, 88 S.Ct. 1104, 19 L.Ed.2d 1280.

Wilkes has never requested reinstatement to the Bar of Florida, evidently because he feels that such a request would be tantamount to admitting guilt as to the charges against him. Instead, on August 6, 1971, Wilkes filed a "Motion to Confirm Credentials to Practice Before the Courts of the Southern District". The motion alleged, in substance, that the grounds given for the disbarment in New York for the derivative suspension in Florida were pretextual. It alleged that he was purged in New York as a suspected anti-Semite and that he was purged in Florida as a suspected intellectual and "active follower of the existentialism philosophy of radical individualism". Wilkes contends that the district court (and this Court) must give "intrinsic consideration" to the New York record to ascertain whether in the New York proceeding there had been (1) want of due process; (2) infirmity of proof; and (3) "other grave error" that would justify federal courts' not giving effect to the New York judgment directly or indirectly. He argues that the Florida proceeding cannot rise above the level of the New York proceeding.

■ Wilkes is on solid ground in asserting that disbarment by federal courts does not automatically flow from disbarment by state courts. Federal courts must "determine for ourselves the right to continue to be a member of

. . . [the federal Bar]" after giving "intrinsic consideration" to the underlying record. Theard v. United States, 1957, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342. See also Selling v. Radford, 1917, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 and In re Ruffalo, 1968, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117, reh. den'd 391 U.S. 961, 88 S.Ct. 1833, 20 L.Ed.2d 874.

On September 2, 1971, the district court entered an order taking jurisdiction of the matter "without prejudice to any party or other interested person or association's rights to demonstrate lack of jurisdiction for reasons presently unknown" to the Court. In the same order, the district court denied Wilkes's ex parte petition for confirmation of his credentials to practice before the Southern District "for the reason that he has failed to comply with the local rules of this Court regarding suspension of attorneys, and further that his delay in filing such a petition is not sufficiently explained in his petition". In the same order, the Court appointed the United States Attorney to represent the Southern District Bar in the matter, and invited the Bar Association of the City of New York and the Florida Bar Association to appear as amici.

The United States Attorney filed a memorandum on Wilkes's rights "to reinstatement" in which he urged the Court to rule against Wilkes. The Bar Association of the City of New York declined to appear in the proceeding. The Florida Bar Association filed a motion to dismiss and a memorandum in support of the motion.

In its memorandum, the Bar argued that Wilkes's petition should not be treated as a motion for confirmation, but rather should be treated as a motion for *reinstatement*. In making this argument, the Bar assumed that Wilkes had in fact been suspended from practice before the Southern District in 1967, immediately or shortly after his suspension in Florida. Nowhere in the memoran-

dum, however, is the precise basis for this assumption made clear. The Bar did not cite any order of court suspending Wilkes; nor did it cite the register of attorneys qualified to practice before the Southern District as showing that Wilkes had been suspended. At any rate, based on its assumption that Wilkes had been suspended, and that his petition should therefore be treated as one for reinstatement, the Bar argued that the district court should abstain from deciding the merits of the petition because the petitioner then and at all times had a present right to petition the Florida Supreme Court for reinstatement.

The district court apparently accepted without further inquiry the Bar's assumption that Wilkes had in fact been suspended in 1967 and treated the petition as one for reinstatement. In an order entered December 16, 1971, the court agreed that it was appropriate that it abstain until Wilkes filed a petition for reinstatement with the Florida Supreme Court. The district court accordingly dismissed the complaint.

II.

The trial court was mistaken in assuming that Wilkes ever was suspended from practice before the Southern District. We conclude, therefore, that the court erred in treating the petition as one for reinstatement, and in deciding on that basis that it should abstain pending an application by Wilkes for reinstatement in Florida.

As we indicated above, the Florida Bar Association in its memorandum in the district court did not state any basis for its assumption that Wilkes had been suspended from practice before the Southern District in 1967. Nor did the district court cite any particular order suspending Wilkes. Before this Court, however, the Bar Association has made it clear that the basis for its position— and that of the district court—is Local Rule 16, subd. E(2) of the Southern

District of Florida, governing the discipline of attorneys. This rule provides:

Whenever it is made to appear to the Court that any member of its bar has been disbarred or suspended from practice by the Supreme Court of Florida, or convicted of a felony in any court, he shall stand suspended from practice before this Court on the eleventh day following entry of judgment, unless he shall file a petition in this Court, with copy thereof, served to the United States Attorney, before that day, to modify, or terminate such suspension. If such petition be timely filed, suspension will be thereby deferred until entry of an order thereon. Modification or termination of suspension by this Court shall be granted only upon showing of good cause.

The Bar Association notified the clerk of the district court of Wilkes's Florida suspension by letter dated May 1, 1968. Had Local Rule 16, subd. E(2) been in effect, Wilkes automatically would have been suspended ten days after the receipt of the letter by the clerk, unless he had petitioned within that time for modification or deferment of the suspension.

Local Rule 16, subd. E(2), however, was not in effect in 1967 or 1968, and it is not proper to conclude on the basis of how it would have operated that Wilkes was actually suspended in 1967 or 1968. The difficulties in this case resulted from the failure by both the parties and the district court to conduct a sufficiently thorough search to determine when or how the assumed 1967 suspension by the Southern District was accomplished. We have made what we regard as such a search, and that search has revealed no basis for finding that Wilkes was ever derivatively suspended by the district court. On the contrary, our search has revealed the following:

1. The register of attorneys for the Southern District of Florida contains no order or other reference to that court's having suspended Wilkes.

2. The Southern District's Rule 16, subd. E did not go into effect until January 1, 1969, when it was adopted then as Rule 17, subd. E; it was renumbered Rule 16, subd. E after a revision of the rules effective in June 1971.

3. In 1967, when Wilkes was suspended by the Florida Supreme Court and when the Bar and district court assumed that he had been derivatively suspended by the Southern District, the local rules in effect were those adopted in 1964. The 1964 rules contained no provision for the discipline of attorneys admitted to practice before the Southern District. They were amended in 1966 to add Rule 14, subd. B. Rule 14, subd. B covered discipline of attorneys, but it applied only when an attorney had been convicted of a felony. Thus, the local rules in effect in 1967, when Wilkes was suspended by Florida, and in 1968, when the Florida Bar notified the Southern District of the suspension, did not cover the situation where an attorney had been suspended by the Supreme Court of Florida.

It is clear, then, that the district court erred in treating Wilkes's petition as one for reinstatement rather than one for confirmation of his credentials. The court, on the allegations in the petition, should have given "intrinsic consideration", under the *Selling, Theard,* and *Ruffalo* decisions to the grounds relied on by the New York and Florida courts. A remand will be required in this case so that the district court may hold a hearing (in effect, a de novo hearing) to conduct such an inquiry. Federal courts must "determine for ourselves the right to continue to be a member of . . . [the federal] Bar" after giving "intrinsic consideration" to the underlying record to verify whether "one or all of the following conditions . . . appear: (1) that, the state procedure, from want of notice or opportunity to be heard, was wanting in due process; (2) that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not, consistently with our duty, ac-

cept as final the conclusion on that subject; or, (3) that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do." Selling v. Radford, 243 U.S. 46, 51.

Wilkes contends that this Court is in as good a position as the district court to decide the merits of his petition, and asks us to hold that the state court proceedings should not be credited by the federal district court. We find no merit in his suggestion that we are in a position to decide the case in full, and instead order a remand to the district court for decision on the merits. We hold that Wilkes is entitled to practice before the Southern District of Florida *pendente lite*.

Reversed and remanded for further proceedings consistent with this opinion.