### In re William B. DAWSON, III, an Attorney, Appellant.

### No. 77–3469.

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1980.

Gerald R. Hart, Jacksonville, Fla., for appellant.

Silas T. Tygart, Jr., Staff Counsel, The Florida Bar, Jacksonville, Fla., for appellee.

Before COLEMAN, Chief Judge, FRANK M. JOHNSON, Jr. and POLITZ, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

This is an appeal from an en banc order of the United States District Court for the Southern District of Florida suspending William B. Dawson, III, from practice in the Southern District.

The controversy arose as a result of Dawson's disbarment from the practice of law by the Florida Supreme Court. *Florida Bar v. Dawson,* 318 So.2d 385, 386 (Fla.), *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975). The principal basis for the disbarment was a referee's finding that Dawson had made regular monetary advancements to a substantial number of his clients for purposes unrelated to litigation, with no effort to obtain repayment if a client's case was lost. After an independent review of the record, the Florida Supreme Court determined that this finding was supported by clear and convincing evidence [1] and that the conduct it described

1. The referee heard testimony from former clients and a former secretary. In relevant part, the secretary's testimony was as follows:

Q. Okay. To your knowledge, was Mr. Dawson giving monetary advances to any of his clients?

A. Yes, sir.

Q. And again, during this period of time that you were working; is that correct?

. . . . .

A. Mr. Dawson would instruct the secretary to make out a check to a certain individual for a certain amount.

. . . . .

Q. When, during the time that you worked for Mr. Dawson or how often during the time you worked for Mr. Dawson did he instruct the secretaries in your presence to make monetary advancements to clients?

. . . . .

A. Daily.

. . . . .

Referee: What period of time are you referring to, Miss Clark?

A. I'm sorry. From Monday through Friday.

Referee: No, what dates are we talking about?

A. The dates of my employment.

. . . . .

Q. Miss Clark, who determined the amount of the advances to be given to these clients that you've testified about?

A. Mr. Dawson.

. . . . .

Q. During the time that you worked in Mr. Dawson's office, where did you generally stay during that period of time?

A. Normally in the back. I had a back office.

Q. Were you in a position to know or to see advancements when they were given?

A. Occasionally.

Q. Did you have, normally on what days were the advancements given on?

A. On Fridays.

. . . . .

Q. Would this occur every Friday during the time you worked there?

A. Yes.

. . . . .

Q. How many clients would come in on Fridays to receive monetary advancements?

was clearly improper.[2] It concluded, in light of this determination and Dawson's previous discipline for similar misconduct involving advances, *see Florida v. Dawson,* 111 So.2d 427 (Fla.1959), that disbarment was appropriate. 318 So.2d at 385. The court also found that there was sufficient evidence to support the referee's finding that Dawson had knowingly received stolen property but concluded that, because the evidence was circumstantial, it was only a contributing and not an adequate ground considered alone for disbarment. *Id.* at 385–86.

The rules of the United States District Court for the Southern District of Florida require an attorney so disbarred to petition the court within ten days to confirm credentials or to stand suspended.[3] Dawson filed a petition within the time limit. By en banc order, the petition was denied.

■ Dawson contests the denial by this appeal, contending that the district court committed reversible error by unduly deferring to the findings and conclusions of the Florida Supreme Court. He claims, first, that the district court was required to ignore the Florida findings and conclusions and make its own independent determination and evaluation of the facts., He claims, second, that the Florida findings and conclusions are fatally defective. Neither claim has any merit. The consideration given Dawson's petition by the district court was not only adequate, it was commendable. The district court's resulting acceptance of the Florida judgment was correct

A. . . . . I don't know if I could begin to even give you an idea. Could I just say hundreds?

Q. . . . . How did you know how much advancement to give each client when they would come in for their advancement checks?

A. Normally we were instructed by Mr. Dawson.

Q. And how did you know how long to continue or how many weekly advancement checks to give, how long to continue the weekly advancement checks?

A. . . . . Well as long as Mr. Dawson would say . . . write this person a check . .

There would be times when Mr. Dawson would say, you know, in other words, don't give this person an advance.

Q. . . . . What was the system for repayment of the advancement?

A. On a closing statement, when a case was closed . . . advances would be pulled and they would be, you know, deducted from the part of the settlement.

Q. . . . . To your knowledge, were the advances ever repaid by the client in those cases that were lost? That you were personally aware of?

A. Not to my knowledge.

One of the former clients testified that the advances were disbursed practically automatically. No request was necessary.

2. The court found that the making of such advances "violated Ethical Consideration 5–8 of the Florida Code of Professional Responsibil-

ity, which states that a financial interest in the outcome of litigation results if monetary advances are made by a lawyer to his client." 318 So.2d at 385. *See also* Disciplinary Rule 5–103(B), Florida Code of Professional Responsibility. The Rule, which implements Ethical Consideration 5–8, states:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

3. Local Rule 16E(2), United States District Court for the Southern District of Florida, provides:

> Whenever it is made to appear to the Court that any member of its Bar has been disbarred or suspended from practice by the Supreme Court of Florida, or convicted of a felony in any court, he shall stand suspended from practice before this Court on the eleventh day following entry of judgment, unless he shall file a petition in this Court, with copy thereof served to the United States Attorney, before that day, to modify or terminate such suspension. If such petition be timely filed, suspension will be thereby deferred until entry of an order thereon. Modification or termination of suspension by this Court shall be granted only upon showing of good cause. Final disposition of the criminal case resulting in acquittal will terminate this suspension.

on the law and clearly supported by the record.

Supreme Court precedent has established that a state court disbarment should be accorded federal effect, unless it appears from "an intrinsic consideration of the state record" (1) that the state proceeding was wanting in due process, (2) that the proof in the state proceeding was so infirm "as to give rise to a clear conviction on our part that we could not consistently with our duty, accept" the state court's conclusion as final, or (3) that to do so would "that for some other grave reason . . . conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do." *Selling v. Radford*, 243 U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585 (1917). *See In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Theard v. United States*, 354 U.S. 278, 282, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).[4] This Circuit expressly adopted this standard in *In re Wilkes*, 494 F.2d 472, 476–77 (5th Cir. 1974). *See also In re Collis*, 556 F.2d 804, 805 (6th Cir. 1977); *Wrighten v. United States*, 550 F.2d 990, 991 (4th Cir. 1977).

In this case it is clear that Dawson was afforded more than an "intrinsic consideration" of the state record. Dawson's petition was referred to a district court grievance committee. The committee had before it the full record of the state proceedings. In addition, the committee held an evidentiary hearing at which Dawson had an opportunity to testify and to present other evidence.[5] Dawson did not testify at the hearing but he did present one witness and introduce several exhibits.[6] Based on the evidence presented at the hearing and the state record, the grievance committee prepared and submitted a report to the district court recommending that the court accept the Florida Supreme Court's judgment of disbarment.[7] It was only after receiving this report and hearing argument on it that the district court, acting en banc, adopted the committee findings and denied Dawson's petition.[8]

 It is also clear that Dawson failed to show that the district court erred in respecting the Florida findings and conclusions. Dawson disputes these findings on two grounds. First, he claims that he had no notice that his monetary advances were

4. In *Ruffalo*, an attorney was indefinitely suspended from state practice as a result of a charge brought against him only after he had testified in the disciplinary proceedings and on which no additional evidence was taken. Applying *Radford*, the Supreme Court concluded that this was a denial of due process and thus that federal recognition of the state judgment was improper. 390 U.S. at 549–52, 88 S.Ct. 1222. In *Theard*, a state disbarred an attorney "eighteen years after he had uttered a forgery when concededly he 'was suffering under an exceedingly abnormal mental condition, some degree of insanity.' " Applying *Radford*, the Court concluded that the disbarment offended "principles of right and justice" and declined to give it federal effect. 354 U.S. at 282, 77 S.Ct. at 1277. In *Radford*, the Court accepted the state judgment. 243 U.S. at 51–52, 37 S.Ct. 377.

5. Approximately two months prior to the hearing, the grievance committee served Dawson with a Notice of Hearing that stated in part:
 YOU ARE FURTHER NOTIFIED that you will be given the right to be present at the taking of all testimony, to present testimony and evidentiary exhibits in your own behalf, to cross examine any witnesses presented to

the Committee and to be represented by counsel.

6. Dawson contends that the evidence he introduced during the hearing before the district court's grievance committee was not considered by the committee. This contention is unsupported by the record. On Dawson's objection, the committee did refuse to consider evidence of Dawson's misconduct not in the state record that was offered by a representative of the Florida Bar, but the committee did admit and apparently did consider all of the evidence submitted by Dawson.

7. Excerpts from the report are attached as an appendix.

8. Dawson contends that the district court erred in failing to rule on a motion for summary judgment that Dawson filed after his petition had been referred to the grievance committee and after the committee had notified him of the date of its hearing. Dawson's motion for summary judgment was inappropriate. His claim that the district court erred in failing to rule on it is frivolous.

improper and would subject him to disbarment. This claim is baseless. As the grievance committee found, and as the appended excerpts from its report indicate, Dawson's conduct clearly violated both old and new canons, ethical considerations, disciplinary rules, and opinions of professional responsibility. There is no question that Dawson knew or should have known that this was the case.[9] That there may have been other lawyers who regularly made such improper advances but avoided sanction, as Dawson contends, is no excuse. Second, Dawson claims that the proof as to his knowing receipt of stolen property was impermissibly infirm. This claim has no merit. As discussed above, the Florida Supreme Court itself noted that the evidence as to this count was circumstantial and so accorded it only limited effect.

We agree with the grievance committee and the district court that there is no discernible basis for disputing the Florida judgment of disbarment. The judgment of the district court is AFFIRMED.

### APPENDIX

Excerpts, Grievance Committee Report, In re William B. Dawson, III

On September 19, 1975, Dawson filed his Petition to Confirm Credentials in this, the United States District Court, Southern District of Florida, Miami Division. On October 4, 1976, after notice of hearing, the petitioner filed a motion for summary judgment and on November 13, 1976, the Grievance Committee for the United States District Court convened to hear such evidence

and arguments as the parties desired to offer. Oral argument for Dawson was presented by Gerald Hart of Jacksonville, Florida. S. Thompson Tygart, Jr., presented the case for The Florida Bar.

Dawson presented one witness, Robert J. Beckham, an attorney specializing in plaintiff's personal injury actions. Beckham testified that he overheard oral argument in the Florida Supreme Court concerning loans or advances to clients and that he subsequently felt compelled to write a letter to the court urging the justices to render a "definitive ruling" on the issue (GC 9). [Letter admitted into evidence].

Dawson then offered into evidence certain exhibits attached to his Motion for Summary Judgment. These included a certified copy of a criminal case record showing the charges against Petitioner had been nolle prossed; Dawson's testimony from the hearing of The Florida Bar Grievance Committee in 1957; assorted affidavits and letters from and to clients of other Jacksonville attorneys having received advances from their attorneys prior to settlement of their cases; and, excerpts of testimony from Steven A. Werber, attorney, who was Chairman of a Special Grievance Committee of The Florida Bar which considered a similar matter not specifically involving Dawson.

\*　　\*　　\*　　\*　　\*　　\*

In his Petition to Confirm Credentials filed in this Court, Dawson alleges that his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments

---

**9.** For example, Dawson's counsel admitted to the grievance committee that there was no evidence of any case which Dawson had lost in which an advancement was repaid. *See also* note 1, *supra*. In fact, Dawson does not contend that he was ignorant of the authority cited by the committee. He claims, instead, that he properly relied on dicta by the Florida Supreme Court in his 1959 suspension case that, once legitimately employed, a lawyer is not precluded from "advancing sums incidental to the conduct of the client's business provided that promises of such advance were not conditions to obtaining employment." *Florida v. Dawson*, 111 So.2d 427, 430 (Fla.1959). This claim is disingenuous. In 1961, the Florida court ex-

plained that the 1959 *Dawson* decision only indicated approval of "a good faith advance of expenses in the course of litigation as a matter of convenience" [presumably with provision for repayment if the litigation was unsuccessful], not "the investment of large sums of money both in litigation costs and living costs for the client for the purpose of preserving professional employment." *Florida v. Rhubottom*, 132 So.2d 395, 399 (Fla.1961). This was clearly the purpose of the Dawson advances at issue here. *See also* Florida Bar Professional Ethics Committee Opinion 65–39 (June 15, 1965) ("A lawyer may not ethically advance living expenses to a client pending settlement and collection of a claim, judgment, or award.")

 have been violated throughout the investigative and disciplinary proceedings culminating in a judgment of disbarment by use of evidence resulting from the illegal interception of his private communications; by the illegal burglarizing of his personal files and records; by the illegal seizure of his property under defective search warrants and by the illegal use of his personal records subpoenaed in criminal prosecutions against him.

He also raises the issue of "prosecutorial misconduct and selective discriminatory prosecution and punishment." He claims the proceedings were "instigated and managed" by S. Thompson Tygart, known "prominently, for representation of insurance companies in personal injury cases and an adversary of Dawson in the courtroom." (Petitioner's Motion for Summary Judgment, 48). Dawson further charges that Assistant Bar Counsel, Charles P. Pillans, III, who participated during the early stages of the proceeding, had been an Assistant State Attorney involved with the Duval County Grand Jury investigation of Dawson. Dawson alleges that Tygart's prosecution of him was motivated by his pecuniary interest in the outcome of the proceedings, the motivation of which was to eliminate Dawson from the practice of law due to his "uncommon" success in prosecuting insurance claims. Dawson has further alleged that these proceedings were instigated and managed by and under the pressure of insurance companies manipulating The Florida Bar and the Florida Supreme Court to their own best interest.

Dawson offered virtually no testimonial or documentary · evidence in support of these allegations with the exception of an excerpt from a deposition of Pillans taken by Dawson. Pillans testimony indicates that during his employment as an Assistant State Attorney he participated in the Grand Jury investigation of Dawson. Later in his association with Tygart as Assistant Bar counsel he aided in the early stages of the Bar's proceedings against Dawson and assisted in the selection of witnesses called to testify before the Grievance Committee.

No other information on this issue is before the committee at this time.

Lastly, petitioner has raised arguments that the charges raised in the state court system would not have resulted in disbarment in the federal system, since their rules and standards of conduct may differ. Dawson maintains that the making of monetary advancements to clients for purposes unconnected with solicitation does not violate the standards of the Bar of the Federal District Court for the Southern District of Florida. Moreover, with regard to Count IV, he contends that Local Rule 16E(2) governs the federal count position which provides in part:

"Whenever it is made to appear to the Court that any member of its bar has been disbarred or suspended from practice by the Supreme Court of Florida, or convicted of a felony in any court, he shall stand suspended from practice before this Court on the eleventh day following entry of judgment, unless he shall file a petition in this Court, with copy thereof served to the United States Attorney, before that day, to modify or terminate such suspension. If such petition be timely filed, suspension will be thereby deferred until entry of an order thereon. Modification or termination of suspension by this Court shall be granted only upon showing of good cause. Final disposition of the criminal case resulting in acquittal will terminate the suspension."

Having detailed the background of the matter and contentions of petitioner (Dawson) and The Florida Bar, it remains to set forth our conclusions and recommendations.

## CONCLUSIONS

1. It is a violation of Canons 6 and 10 of the American Bar Association Canons of Professional Ethics adopted August 27, 1908 for an attorney to advance money to a client to defray living costs or expenses while suit is pending. It was so held in formal opinion No. 288 by the ABA Com-

mittee on Professional Ethics delivered October 11, 1954. The Florida Bar Professional Ethics Committee reached the same conclusion as set forth in Opinion 65–39 published June 15, 1965. A copy of both opinions are attached hereto.[26] We find that

[26] ABA Opinion 288 appears in ABA Opinions on Professional Ethics 1967 Edition at pp. 641–642 and ABA Journal, Vol. 41, January 1955, p. 33. Florida Committee Opinion 65–39 appears in Selected Opinions of the Professional Ethics Committee, The Florida Bar, 1959–1967, published in 1969.

such opinions properly set forth the Florida rule under the old canons.

2. Ethical Consideration EC 5–8 of the Florida Code of Professional Responsibility, as implemented by Disciplinary Rule Dr 5–103(B), also prohibits an attorney from advancing financial assistance to a client to help defray his living costs pendente lite.

3. The new canons were adopted by the Florida Supreme Court on June 3, 1970 to take effect October 1, 1970. In adopting the new canons, now referred to as The Code of Professional Responsibility, the court expressly provided that adoption thereof would not affect applicability of former rules of professional conduct.[27]

[27] *In re Integration Rule of the Florida Bar,* 235 So.2d 723, 727 (Fla.1970).

Thus, Dawson's conduct of advancing financial assistance to his personal injury clients as distinguished from advancing litigation costs with the client remaining liable for ultimate reimbursement, is conduct proscribed under both the old canons and the new code. Dawson's conduct in that regard seems to have transcended, timewise, applicability of the old canons and the new code; and since the Committee can discern no differences of substance in this context between the old and new ethical concepts, there is no basis for Dawson's contention that he has been convicted under an ex-post facto law.

4. In accordance with the mandate of *In re [Donald E.] Wilkes,*[28] the Committee has

[28] 494 F.2d 472 (5th Cir. 1974) and authorities cited.

given "intrinsic consideration" to the underlying record and finds:

(1) That Dawson had the opportunity to be heard and that the state procedure was not wanting in due process of law.

(2) While fact finders might, in utmost sincerity, differ as to conclusions to be drawn from the record, we find no infirmity of proof which would give rise to a clear conviction on our part that the conclusion of the Supreme Court of Florida should not be accepted as final on the subject of Dawson's disbarment.

(3) No other grave reason exists which should convince us to disturb the natural consequences of the judgment of disbarment entered by the Florida Supreme Court.

5. There can be no legitimate contention that the standards of the Bar of the United States District Court, Southern District of Florida, are less than those imposed on Florida lawyers generally, Dawson's contentions to the contrary notwithstanding. The Committee believes that at all material times such standards were and are identical as, indeed, they should be.[29]

[29] See Southern District Rule 16B.

6. Applying the same Selling-Wilkes criteria, the Committee can discern no basis for disputing the Supreme Court of Florida's finding and conclusion as to Count IV of the Bar's complaint.

7. Dawson's silence in the state proceedings and before this Committee has not influenced the Committee's decision in any way. Attorneys enjoy Fifth Amendment rights the same as any other citizen.

Respectfully submitted,

GRIEVANCE COMMITTEE,
U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF FLORIDA