**In re Paul F. McTIGHE, Jr.**

**No. 3:00–MC–101–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 13, 2001.

Vance Edward Ivy (argued) and Julie P. Wright of Gibson Ochsner & Adkins, Amarillo, TX, for McTighe.

Before ROBINSON, FITZWATER, and CUMMINGS, District Judges.

## PER CURIAM.

The principal question presented in this reciprocal discipline matter is whether Paul F. McTighe, Jr., Esquire ("McTighe"), has presented a "grave reason" that is sufficient under the test of *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), not to suspend him from this court's bar based on his suspension from practice by the United States Court of Appeals for the Tenth Circuit. Having conducted intrinsic review of the pertinent underlying records, considered the *Selling* factors, and heard oral argument, we conclude that McTighe's membership in the bar should be suspended for six months.

I

The Tenth Circuit ordered McTighe to show cause why he should not be disciplined, citing nineteen appeals in which he had raised a frivolous argument, misrepresented the record on appeal, or misrepresented the law. App. 2–7.[1] Noting "a pattern to Mr. McTighe's history of unprofessional conduct before th[e] court," *id.* at 2, the Tenth Circuit issued a show cause order that required that McTighe respond specifically to each of the nineteen instances[2] of alleged misconduct. In response, McTighe separated the cases into three groups. He contended that in eleven cases he had acted properly. *Id.* at 16–31. In five cases, McTighe "acknowledge[d] the Court's impression that he acted improperly," but he stated that there were arguable defenses to the circuit court's allegations. *Id.* at 31. He conceded that in six cases "his conduct fell below the standards expected of counsel," but maintained that the errors were at most the result of negligence, with no intent to deceive the court.

*Id.* at 41. The Tenth Circuit found that he specifically admitted presenting a frivolous argument in one appeal, misstating and mischaracterizing the records in two appeals, misstating the law in one appeal, and presenting a frivolous argument in one appeal. *Id.* at 106–07.

McTighe attempted to explain his deficiencies by citing professional and management mistakes and personal tragedies that he had encountered during the relevant time period. *Id.* at 46–57. He advised the Tenth Circuit that he had addressed various problems facing his law practice by instituting several procedures designed to remedy the errors he had committed. *Id.* at 57–60. In addition to restructuring his law practice, he voluntarily entered counseling to deal with tragedies and stresses in his personal life. *Id.* at 61. Citing these changes, McTighe argued that although he should be punished for his errors and deceptions to the court, any sanctions should include nothing more than reprimand or admonishment, *see id.* at 65, which the Tenth Circuit likened to "a status similar to probation," *id.* at 96. Noting previous sanctions imposed against McTighe and his continued pattern of misrepresentation, the Tenth Circuit suspended him from practice for six months effective September 22, 2000. *Id.* at 93, 97. Reinstatement to that court's bar is "premised on submission of an affidavit evidencing how the changes in his professional and private life described in his response to the show cause order of May 2, 2000, have affected his practice in ways that will eliminate his errors in this court arising from either negligence or willful disregard." *Id.* at 98 (citation omitted).

In reliance on the Tenth Circuit's order, several courts imposed discipline on McTighe. The Northern and Eastern Districts of Oklahoma automatically suspended McTighe based on the Tenth Circuit's

---

1. Citations to "App." are to the appendix of underlying records of the Tenth Circuit that McTighe filed in accordance with the panel's December 11, 2000 order.

2. Two cases—*Snider v. Department of Health & Human Services* and *Bennett v. Apfel*—were included in more than one category. *See id.* at 2, 4, 6, and 7.

order, *id.* at 110–11, but subsequently revoked the automatic suspension and placed McTighe on probation, *id.* at 112–13. The Western District of Oklahoma also placed McTighe on probation for six months. *Id.* at 115. The Eastern District of Texas, pursuant to E.D. Tex.R. AT–2(b)(2) (*reprinted in* Texas Rules of Court: Federal at 362 (West Pamp. Supp.2000)), suspended McTighe for six months but allowed him to continue representing his client in a pending action. *Id.* at 116–18. The United States Court of Appeals for Veterans Claims reprimanded McTighe. *Id.* at 120. The Oklahoma Bar Association declined to take further action, "consider[ing] the action taken by the various courts sufficient to address this matter." *Id.* at 114.

■ Recognizing that our rules require that we automatically revoke his membership[3] based on the Tenth Circuit's decision, McTighe requests that we exercise our discretion in fashioning a more lenient sanction. He asks that the court place him on probation for a period of time. Alternatively, he requests that we "revoke his membership to this bar for the six-month period provided by the Tenth Circuit[.]" Br. at 3.[4] At oral argument, McTighe's counsel requested that if McTighe's membership is suspended, we run the suspension concurrently with the Tenth Circuit's order (*i.e.,* through March 22, 2001).

N.D. Tex. Civ. R. 83.8(a)(1)(C) provides that "[m]embership in the bar of this court shall be automatically revoked ... if for any reason other than nonpayment of dues, failure to meet continuing legal education requirements, or voluntary resigna-

tion unrelated to a disciplinary proceeding or problem, an attorney loses, either temporarily or permanently, the right to practice law before ... any federal court[.]" Despite the automatic revocation proviso of this rule, our *en banc* court has in this case, *see In re McTighe,* Misc. No. 3:00–MC–101–D (N.D.Tex. Dec. 11, 2000) (en banc) (order), as in a prior case, *see In re Smith,* 100 F.Supp.2d 412 (N.D.Tex.2000) (en banc) (per curiam) ("*Smith I*"), *appeal docketed,* No. 01–10011 (5th Cir. Jan. 3, 2001), delegated to a three-judge panel the determination whether to impose in a reciprocal discipline matter identical punishment to that exacted by another court. Accordingly, we will decide, based on our intrinsic review of the record of the disciplining tribunal and application of the *Selling* factors, whether to revoke McTighe's membership in the bar or to impose an alternative form of discipline.

## II

■ In a reciprocal discipline case, we give effect to the disciplining court's order unless one or more of three factors dictate that we not do so.

> Supreme Court precedent has established that a state court disbarment should be accorded federal effect, unless it appears from "an intrinsic consideration of the state record" (1) that the state proceeding was wanting in due process, (2) that the proof in the state proceeding was so infirm "as to give rise to a clear conviction on our part that we could not consistently with our duty, accept" the state court's conclusion as final, or (3) that to do so would "that for some other grave reason ... conflict with the duty which rests upon us not to

**3.** At oral argument, McTighe's counsel requested clarification of the distinction between automatic revocation from the bar and suspension from the bar. Automatic revocation is the equivalent of disbarment, requires that the attorney apply anew for admission and meet the eligibility requirements for initial admission set out in N.D. Tex. Civ. R. 83.7(a), and is subject to the discretionary decision of the district judge who reviews the

application for admission, *id.* 83.7(d). An attorney who is suspended from the bar is not disbarred and, at the end of his suspension, may begin practicing after fulfilling any conditions imposed as part of the suspension.

**4.** Citations to "Br." are to McTighe's brief filed in response to the panel's December 11, 2000 order.

disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do."

*In re Dawson,* 609 F.2d 1139, 1142 (5th Cir.1980) (quoting *Selling,* 243 U.S. at 51, 37 S.Ct. 377, and citing cases). Although *Selling* and *Dawson* address reciprocal discipline based on a state court's disciplinary order, our *en banc* court held in *Smith I* that the *Selling* factors apply to reciprocal discipline based on a federal court order. *See Smith I,* 100 F.Supp.2d at 416. We apply the relevant factors based on an intrinsic review of the underlying records in the disciplining tribunal, which in this case is the Tenth Circuit. *See In re Smith,* 123 F.Supp.2d 351, 355 (N.D.Tex. 2000) (three-judge panel) (per curiam) (*"Smith II "*) (citing *Greer's Refuse Servs., Inc. v. Browning–Ferris Indus.,* 782 F.2d 918, 923 (11th Cir.1986)), *appeal docketed,* No. 01–10011 (5th Cir. Jan. 3, 2001).

McTighe conceded in his brief, *see* Br. at 3, and during oral argument that he received in the Tenth Circuit adequate notice and an opportunity to be heard. He does not assert that there was an infirmity of proof upon which the Tenth Circuit based its decision. *Id.* Accordingly, we need not address the first and second *Selling* factors in detail, and we find that they support imposing reciprocal discipline.[5]

■ McTighe confirmed at oral argument that he relies only on the third *Selling* factor. He asserts that there are grave reasons not to revoke his membership in the bar. *Id.* In support of his argument, he notes that several other courts have imposed lesser punishments, such as probation. He points to the fact that the Oklahoma State Bar declined to initiate any further disciplinary proceedings, *see* App. 114, and refers to his response to the Tenth Circuit's show cause order, in which he details his professional

and personal problems as well as his efforts to address them. During oral argument, McTighe relied exclusively on his attempts to improve his law practice and personal life to support the conclusion that he has established a grave reason to justify only the sanction of probation.

We hold that McTighe has not established a grave reason not to suspend him. McTighe does not cite any cases in support of this argument. The *Smith II* panel found only one decision that interpreted the "grave reason" factor under *Selling. See Smith II,* 123 F.Supp.2d at 358–59 n. 14. In *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), the United States Supreme Court declined to impose the same discipline as had a state court eighteen years earlier when it had disbarred an attorney who was then suffering from extreme mental illness. Although McTighe has unquestionably experienced extreme personal stresses during the past several years, unlike *Theard,* McTighe's problems with the court are much more recent and his punishment is far less severe. In light of these distinctions and the Tenth Circuit's findings that McTighe repeatedly filed frivolous arguments, misstated the law, and misrepresented the record, we hold that imposing reciprocal discipline will not constitute a grave injustice.[6] Moreover, we are not persuaded that McTighe's recent efforts— although commendable—to improve his law practice and personal life constitute a grave reason not to impose discipline like that prescribed by the Tenth Circuit. McTighe made similar arguments to the Tenth Circuit, *see* App. 107, which concluded that they were insufficient grounds not to suspend him from practice, *id.* at 108 ("The changes Mr. McTighe has initiated in his office procedures and in his personal

---

**5.** McTighe states in his brief:

> Mr. McTighe does not claim that he was denied notice and/or an opportunity to be heard in connection with the Tenth Circuit's actions, nor does he claim that there

was an infirmity of proof upon which the Tenth Circuit based its decision.

*Id.*

**6.** McTighe's counsel essentially acknowledged at oral argument that *Theard* is inapposite.

life evidence his intent to improve, but they do not redress the errors he has committed in the past."). We question whether discipline would in any true sense be reciprocal if an attorney's post-discipline efforts to rectify miscreant conduct before another tribunal could satisfy the grave reason component of the *Selling* test. Following McTighe's reasoning to its logical conclusion, an attorney could argue that revocation from the bar of one court should not result in reciprocal disbarment by another court if the attorney could show that he undertook recent rehabilitative efforts in the interim. While this might present a reason not to exact the same sanction, it does not demonstrate a *grave* reason.

### III

■ We now consider what discipline to impose. "It is not uncommon that district courts generally impose discipline on members of their bar who are disciplined in another jurisdiction." *Smith II*, 123 F.Supp.2d at 354–55 (quoting *In re Kramer*, 193 F.3d 1131, 1132 (9th Cir.1999)). "[W]hen a district court learns that a member of its bar has been subject to discipline by another jurisdiction, the identical discipline is typically imposed." *Id.* at 355 (quoting *In re Hoare*, 155 F.3d 937, 940 (8th Cir.1998)). We discern no grounds not to impose the same discipline as did the Tenth Circuit, and therefore hold that McTighe's membership in the bar of this court should be suspended for six months.

\* \* \*

For the reasons stated, we suspend McTighe from practicing law in this court for six months effective upon the date this opinion is filed. We direct McTighe to provide a copy of this opinion to the clerk of any court in which he currently is not suspended from practice. At the conclusion of the suspension period, McTighe may begin practicing in this court without further court order.

**SO ORDERED.**