**In re Robert R. WIGHTMAN–CERVANTES**

No. 3:02–MC–036–D.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 14, 2002.

Robert R. Wightman–Cervantes, Dallas, TX, pro se.

Before FITZWATER, McBRYDE, and LYNN, District Judges.

PER CURIAM.

In this reciprocal discipline matter, we must decide whether to revoke the membership of Robert R. Wightman–Cervantes, Esquire ("Wightman–Cervantes") in the bar of this court pursuant to N.D. Tex. Civ. R. 83.8(a)(1)(A) because he has been disbarred from practicing law in the state of Texas. For the reasons that follow, we revoke his membership.

I

Wightman–Cervantes was disbarred and his license to practice law in Texas revoked on January 11, 2002 by the 298th Judicial District Court of Dallas County, Texas. *See Comm'n for Lawyer Discipline v. Wightman*, No. 97–01255–M (Dist. Ct. of Dallas County, 298th Judicial Dist. of Texas, Jan. 11, 2002), *appeal dism'd*, No. 05–0200337–CV (Tex.App. May 10,

2002, no pet.) (per curiam). The Texas Court of Appeals dismissed Wightman–Cervantes' appeal for want of prosecution on May 10, 2002. *See Wightman v. Comm'n for Lawyer Discipline*, No. 05–0200337–CV (Tex.App. May 10, 2002, no pet.) (per curiam).

The version of N.D. Tex. Civ. R. 83.8(a)(1)(A) in effect at the time this reciprocal discipline proceeding was initiated provided that "[m]embership in the bar of this court shall be automatically revoked ... if for any reason other than nonpayment of dues, failure to meet continuing legal education requirements, or voluntary resignation unrelated to a disciplinary proceeding or problem, an attorney loses, either temporarily or permanently, the right to practice law before ... the courts of the State of Texas[.]" Despite the automatic revocation component of this rule, our *en banc* court in this case, *see In re Wightman–Cervantes*, Misc. No. 3:02–MC–036–D (N.D.Tex. July 8, 2000) (en banc) (order), as in prior reciprocal discipline cases, *see, e.g., In re Smith*, 100 F.Supp.2d 412 (N.D.Tex.2000) (en banc) (per curiam), *aff'd*, 275 F.3d 42 (5th Cir. Sept.26, 2001) (table) (per curiam), delegated to a three-judge panel the determination whether to impose reciprocal discipline.[1] Accordingly, we will decide, based on our intrinsic review of the state court record and application of the factors prescribed in *Selling v. Radford*, 243 U.S. 46, 51, 37 S.Ct. 377, 61 L.Ed. 585 (1917), whether to revoke Wightman–Cervantes' membership in our court's bar.

## II

"In a reciprocal discipline case, we give effect to the disciplining court's order unless one or more of three factors dictate that we not do so." *In re McTighe*, 131 F.Supp.2d 870, 872 (N.D.Tex.2001) (three-judge panel) (per curiam).

> Supreme Court precedent has established that a state court disbarment should be accorded federal effect, unless it appears from "an intrinsic consideration of the state record" (1) that the state proceeding was wanting in due process, (2) that the proof in the state proceeding was so infirm "as to give rise to a clear conviction on our part that we could not consistently with our duty, accept" the state court's conclusion as final, or (3) that to do so would "for some other grave reason ... conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do."

*In re Dawson*, 609 F.2d 1139, 1142 (5th Cir.1980) (quoting *Selling*, 243 U.S. at 51, 37 S.Ct. 377, and citing cases). We apply the relevant factors based on an intrinsic review of the underlying records in the disciplining tribunal, which in this case is a Texas state court acting on a suit filed by the Commission for Lawyer Discipline ("Commission"). *See In re Smith*, 123 F.Supp.2d 351, 355 (N.D.Tex.2000) (three-judge panel) (per curiam) (citing *Greer's Refuse Servs., Inc. v. Browning–Ferris Indus.*, 782 F.2d 918, 923 (11th Cir.1986)), *aff'd*, 275 F.3d 42 (5th Cir.2001) (table) (per curiam).

---

1. Rule 83.8(a) was amended, and Rule 83.8(h) was added, effective September 1, 2002. These rules codify the procedure followed in the present matter, in *Smith*, and in *In re McTighe*, 131 F.Supp.2d 870 (N.D.Tex.2001) (three-judge panel) (per curiam). Under the revised rules, as in the present matter, membership in the bar of this court is not automatically revoked in a reciprocal discipline case. Because the revised rules codify the procedures we are following here, it is immaterial whether former Rule 83.8(a)(1)(A) or the rules that took effect September 1, 2002 govern this matter.

Although the *en banc* order of this court[2] and this panel's briefing order[3] made clear that we would conduct our reciprocal discipline analysis according to the *Selling* factors and that Wightman–Cervantes was to address these factors in his brief, he has not discussed them as such or even cited *Selling.* Instead, he argues that this court's review is conducted under the standards set out in *In re Sealed Appellant,* 194 F.3d 666 (5th Cir. 1999). *See* Br. at 1–2. *Sealed Appellant,* however, involved direct disbarment, not reciprocal discipline. *See. Sealed Appellant,* 194 F.3d at 668–670. We have previously distinguished reciprocal discipline proceedings from those involving other types of attorney discipline. *See Smith,* 123 F.Supp.2d at 354 n. 4.

Perhaps because Wightman–Cervantes misapprehends the controlling law, he advances only one argument that appears relevant under *Selling* and five that do not.[4] He maintains that his bar membership should not be revoked because (1) he was not given proper notice and an opportunity to respond, (2) the Commission's

motion for summary judgment was defective on its face, (3) the summary judgment was in part based on a sanction issued at the summary judgment hearing, (4) there is no order of disbarment, (5) it is futile for him to seek a remedy in state court, and (6) the state court abused its discretion in finding evidence to support the Commission's motion for summary judgment.[5]

### III

■ Wightman–Cervantes contends he was not given proper notice and an opportunity to respond to the disbarment petition. On its face, this argument raises a due process challenge. On careful consideration, however, it is clear that he is asserting a state-law issue that does not support the conclusion that he was denied due process.

Wightman–Cervantes maintains that the state court granted summary judgment in favor of the Commission "10 days after the filing of the lawsuit." Br. at 2. In fact, the cause number for the case shows that the Commission filed suit in 1997,[6] and the

---

2. The *en banc* order stated, in pertinent part: "we delegate to a three-judge panel of this court, consisting of Judges Fitzwater, McBryde, and Lynn, the authority to undertake the required intrinsic review, make the analysis under *Selling v. Radford,* 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), and determine the discipline to impose on Wightman–Cervantes following his disbarment by the State Bar of Texas." *In re Wightman–Cervantes,* No. 3:02–MC–036–D, order at 1 (July 8, 2002) (en banc) (per curiam).

3. Our order directed Wightman–Cervantes to "file a brief that sets out the grounds on which he relies to contend, under the factors of *Selling v. Radford,* 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), that the panel should not revoke his membership in the bar of this court." *In re Wightman–Cervantes,* No. 3:02–MC–036–D, order at 1–2 (July 10, 2002) (three-judge panel) (per curiam).

4. At one point in his brief, Wightman–Cervantes maintains that he has no remedy in state court and therefore will file a lawsuit in this court or in another forum asserting a claim for relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* This contention is simply irrelevant to the issues before us, and we will not address it further.

5. Although the second *Selling* factor requires that we assess whether the proof in the state proceeding was so infirm "as to give rise to a clear conviction on our part that we could not consistently with our duty, accept" the state court's conclusion as final, Wightman–Cervantes does not base his sixth argument on this standard. Instead, he rests it on a state-law abuse of discretion standard, which presents only an issue of Texas law.

6. Despite our panel's order directing Wightman–Cervantes to "file an appendix that con-

judgment was signed on January 11, 2002, over four years later. Wightman–Cervantes argues, however, that the Commission filed a fourth amended petition on September 9, 2001, which added new causes of action (including disbarment) and thus became the Commission's live pleading; that the court granted the Commission's summary judgment motion on September 19, 2001; and that the trial court granted summary judgment ten days after suit was filed, thus violating Tex.R. Civ. P. 65.[7]

■ Our due process inquiry focuses on whether Wightman–Cervantes was denied due process, not on whether the state court may have violated—assuming it did—a state rule of civil procedure. "[D]ue process in attorney disbarment proceedings 'includes notice and opportunity to be heard[.]'" *See Smith*, 123 F.Supp.2d at 357 (quoting *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir.1998)). State-law procedural errors do not of themselves constitute due process violations. *See Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir.1988) ("[E]ven if an action by a government entity violates its own rules or those of the state, there is no *constitutional* deprivation unless the conduct also trespasses on federal constitutional safeguards. As long as an individual receives notice and a hearing that satisfies federal

due process, any violations of state law are completely irrelevant to constitutional analysis." (emphasis in original) (citation omitted)).

The record, truncated though it is, *see supra* note 6, shows that the Commission initiated suit in 1997 and that by October 2001, when the Commission moved for summary judgment, the parties had already engaged in extensive proceedings. Wightman–Cervantes was given notice of the summary judgment hearing and an opportunity to be heard. He appeared at the hearing and opposed the Commission's summary judgment motion. The district court disbarred him only after considering the pleadings and argument and after a later hearing on the remedies issue. Although Wightman–Cervantes complains that the court proceeded with the summary judgment motion on the fourth amended petition, which he contends he received only three days before the hearing, the trial court, in its summary judgment order, reflects that the basis for the summary judgment was only those paragraphs of the fourth amended petition that were the same as those in the third. We have compared the cited paragraphs and confirmed that they are substantively identical except for a parenthetical reference to disbarment at the beginning of each cause of action in the fourth amended petition. However, the addition of that

---

tains the underlying records for the disciplinary proceedings concerning him that were conducted by the State Bar of Texas[,]" *In re Wightman–Cervantes*, No. 3:02–MC–036–D, order at 1 (July 10, 2002) (three-judge panel) (per curiam), he included in his August 29, 2002 appendix copies only of the Commission's third and fourth amended petitions. We have therefore determined the year the suit was filed from the cause number. We note that the third amended petition was filed September 28, 1998. *See* App. 10. Despite our concerns that Wightman–Cervantes has presented a selective record that is intended to support his arguments rather than to pro-

vide a complete record, we have determined that we are able to conduct the required intrinsic review on the documents presented.

7. The record shows that Wightman–Cervantes has mistakenly referred to September 9 and 19, 2001 rather than to October 9 and 19, 2001. The state court judgment signed January 11, 2002, *see* App. 1, and the transcript of the summary judgment hearing, *see id.* at 233, reflect that the court granted summary judgment on October 19, 2001. The fourth amended petition was served on October 9, 2001. *See id.* at 40.

reference was irrelevant. The Commission described the matter as a "disbarment" proceeding in its motion for summary judgment. Further, the October 19, 2001 order granting summary judgment did not determine whether disbarment was the appropriate remedy for Wightman–Cervantes' violations of the disciplinary rules. That issue was scheduled for a separate hearing, which the judgment of disbarment reflects occurred on January 11, 2002. Wightman–Cervantes has made no claim that he did not have fair notice of the January 11, 2002 hearing. Wightman–Cervantes does not appear to have moved for a continuance of the summary judgment hearing, nor did he prosecute his appeal therefrom. In light of all of those circumstances, we hold that he was not deprived of due process under the applicable federal standard. *See Smith*, 123 F.Supp.2d at 357 (holding that attorney received due process where circuit court afforded attorney notice and opportunity to be heard before suspending him and later disbarring him).

## IV

We turn next to Wightman–Cervantes' assertion that the Commission's summary judgment motion was defective on its face. He maintains that the motion was deficient under Texas law because the Commission stated no causes of action on which it sought summary judgment, it failed to state the elements of the cause of action on which it relied, and the motion rested on questions of attorney conduct that are not subject to summary judgment as a matter of law because they are ordinarily questions of fact. *See* Br. at 3–4.

In a reciprocal discipline proceeding, we do not sit as a state appeals court. Although we engage in a limited form of collateral review, it is constricted to an assessment of whether the state court proceeding was devoid of due process, whether the proof against the attorney was so infirm "as to give rise to a clear conviction on our part that we could not consistently with our duty, accept" the state court's conclusion as final, or whether accepting the judgment would "for some other grave reason ... conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do." *Dawson*, 609 F.2d at 1142; *McTighe*, 131 F.Supp.2d at 872–73. Even if the Commission's motion was substantively defective under Texas law, we discern no basis to conclude on the reasoning Wightman–Cervantes has presented that the state court denied him due process. Nor, after conducting intrinsic review of the record, do we have a "clear conviction" that the proof was infirm or that his case presents a "grave reason" to deny the disbarment judgment reciprocal effect.

## V

Wightman–Cervantes next maintains that the state court summary judgment was in part based on a sanction issued at the summary judgment hearing. He argues that the Commission used requests for admissions to violate his right to assert his Fifth Amendment privilege, which he contends applies in the quasi-criminal context of attorney disbarment, and that the state court erred in holding that the Commission could use requests for admissions to circumvent the privilege. He contends the Commission's evidence was based on a sanction related to the admissions, that is, deeming them as admissions although the Fifth Amendment was asserted by Wightman–Cervantes, but that no hearing, as required by state procedural rule, was conducted regarding his invocation of the Fifth Amendment privilege to shield the responses.

■ This court has previously rejected the applicability of criminal defendant rights, such as the Fifth Amendment privilege against self-incrimination, to attorney disbarment proceedings. *See Smith,* 123 F.Supp.2d at 357 ("[T]he special protections unique to criminal defendants do not apply to attorneys in disbarment proceedings[.]"). We therefore decline to accept Wightman–Cervantes' argument insofar as it assumes such a privilege applies. To the extent he relies on Texas law procedural errors, we conclude, as we have above, that they establish no due process violation, and we also hold that they present no basis under the other *Selling* factors to decline to give the disbarment judgment reciprocal effect.

## VI

Wightman–Cervantes argues that there is no disbarment order. This contention rests on the assertion that he had moved to recuse the visiting judge who presided over the disbarment action and that, under Texas law, the judgment signed while the motion was pending is void. We reject this argument.

There unquestionably is a judgment of disbarment against Wightman–Cervantes. He has included it in his appendix of exhibits. *See* App. 1–6. An appeal from that judgment has been dismissed by the court of appeals. *See id.* at 9. Wightman–Cervantes concedes in his brief that he sought unsuccessfully to obtain mandamus relief in state court based on the contention that the judgment is void. *See* Br. at 5–6. In a reciprocal discipline proceeding, we will not probe beneath the surface of a disbarment judgment that is regular on its face,[8] except to the extent the attorney ties his challenge to one of the *Selling* factors. As we have noted, Wightman–Cervantes

does not argue the *Selling* factors as such, so we have no indication that he presents this contention in any context that is relevant to this proceeding.

■ Moreover, we decline to disregard the judgment in a case like this one, where the attorney had a right under state law to challenge his disbarment on appeal but did not pursue that remedy. Although the *Selling* factors provide powerful tools to enable federal courts to decline to give effect to state court disbarment judgments, the requirements for doing so are decidedly deferential. The attorney must have been denied due process; the federal court must have a clear conviction that the proof was infirm; or the court must have a grave reason to deny the judgment reciprocal effect. Deference could give way to *de novo* judgment, and respect to indifference, were it possible for a disbarred attorney to forgo state appellate rights in hopes of persuading a federal tribunal that the state court had erred in applying state law. We decline the invitation to disregard the state court judgment on the ground that it is void under state law.

## VII

■ We now turn to his contention that it was futile to seek a remedy in state court. Under state law, Wightman–Cervantes had the right to appeal his disbarment. *See* Tex.R. Disciplinary P. 3.16, *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G, app. A–1 (Vernon 1998). He argues that he was unable to obtain a hearing to establish a basis to proceed *in forma pauperis,* and that his right to due process was denied when his appeal was dismissed for failure to pay the required transcript fee. Wightman–Cervantes contends that, due to his prior involvement as

---

8. Texas law presumes that a judgment is valid. *See, e.g., Vickery v. Comm'n for Lawyer* *Discipline,* 5 S.W.3d 241, 251 (Tex.App.1999, writ denied).

a grieved party and as a fact witness, the court of appeals justice who signed the dismissal judgment had an interest in the matter and the appellate court judgment is therefore void. However, that judge was only one of three appellate justices who dismissed the appeal for want of prosecution. At oral argument, Wightman–Cervantes conceded that his case was not prosecuted, although he attributed it to the court of appeals' failure to grant his *in forma pauperis* application. There is no indication that the justice who signed the judgment had any role in the *in forma pauperis* determination as distinguished from the dismissal for want of prosecution.

These allegations, even if true, do not establish that it was futile for Wightman–Cervantes to seek a state court remedy and do not present a basis under *Selling* for this court to decline to give reciprocal effect to the disbarment judgment. If he is correct that the conduct of the justice who signed the dismissal was improper and had some causal impact, he could have petitioned for relief from the Supreme Court of Texas. He does not assert that he could not have obtained a fair hearing in that court.

### VIII

Wightman–Cervantes posits that the state trial court abused its discretion in finding evidence to support the Commission's summary judgment motion. This presents an issue that is purely one of state law. Wightman–Cervantes does not argue it under one of the *Selling* factors. And our review of the record under the "clear conviction" standard satisfies us that this evidence was not sufficiently infirm to preclude applying reciprocal discipline.

### IX

We now consider what discipline to impose. "It is not uncommon that dis-

trict courts generally impose discipline on members of their bar who are disciplined in another jurisdiction." *Smith*, 123 F.Supp.2d at 354–55 (quoting *In re Kramer*, 193 F.3d 1131, 1132 (9th Cir.1999)). "[W]hen a district court learns that a member of its bar has been subject to discipline by another jurisdiction, the identical discipline is typically imposed." *Id.* at 355 (quoting *In re Hoare*, 155 F.3d 937, 940 (8th Cir.1998)). We discern no grounds not to impose the same discipline as did the State of Texas. Indeed, we think it would be only the most unusual case in which we would not revoke the membership of an attorney who has been disbarred by the State of Texas. We therefore revoke Wightman–Cervantes' membership in the bar of this court.

**SO ORDERED.**