**In re David Lee SMITH**

**No. 3:00–MC–031–D.**

United States District Court, N.D. Texas.

Nov. 21, 2000.

David L. Smith, Fort Worth, TX, pro se.

Before FITZWATER, CUMMINGS, and MEANS, District Judges.

PER CURIAM.

In this attorney discipline matter, we must decide whether the membership of David Lee Smith, Esquire ("Smith"), in the bar of this court should be revoked based on his disbarment by the United States Court of Appeals for the Tenth Circuit. Having conducted intrinsic review of the pertinent underlying records, considered the factors adopted in *Selling v. Radford,* 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), and heard oral argument, we revoke Smith's membership.

I

The background facts and procedural history of this matter are set out in the opinion of the *en banc* court, *see In re Smith,* 100 F.Supp.2d 412, 412–15 (N.D.Tex.2000) (en banc) (per curiam), and need not be repeated at length. In sum, the Supreme Court of the United States, the United States Court of Appeals for the Tenth Circuit, and the State of Colorado have each disbarred Smith. *Id.* at 414–15. N.D. Tex. Civ. R. 83.8(a)(1)(B) and (C)[1]

---

1. N.D. Tex. Civ. R. 83.8(a) provides:
   Loss of Membership. Membership in the bar of this court shall be automatically revoked under the following circumstances: (1) if for any reason other than nonpayment of dues, failure to meet continuing legal education requirements, or voluntary resignation unrelated to a disciplinary proceeding or problem, an attorney loses, either temporarily or permanently, the right to practice law before:
   (A) the courts of the State of Texas;
   (B) the highest court of any other state or the District of Columbia; or
   (C) any federal court; or

provide that "[m]embership in the bar of this court shall be automatically revoked ... if for any reason other than nonpayment of dues, failure to meet continuing legal education requirements, or voluntary resignation unrelated to a disciplinary proceeding or problem, an attorney loses, either temporarily or permanently, the right to practice law before ... the highest court of any other state or the District of Columbia[,] or ... any federal court[.]" Despite the automatic revocation proviso of this rule, a member of this court gave Smith notice of the specific grounds for revoking his bar membership and an opportunity to show cause why it should not be revoked. *Smith,* 100 F.Supp.2d at 413. Sitting *en banc,* our court delegated to this three-judge panel the determination of the discipline to impose on Smith, *id.* at 416, and conferred on us the authority to issue a final ruling, *id.* at 417. The matter is now before us for intrinsic consideration of the records of the disciplining tribunals, application of the *Selling* factors, and entry of a decision.

## II

We address as a threshold matter a fundamental premise of Smith's attacks on the prior disciplinary proceedings and his challenges to our procedure: that attorney disciplinary proceedings are criminal in nature and that he was and is entitled to many of the rights enjoyed by criminal defendants. *See* Br. at 4–5 (referring to motion filed in Tenth Circuit to vacate, set aside, or correct sentence of that court); 8 (referring to district court petition for writ of habeas corpus and to vacate, set aside, or correct sentence of Tenth Circuit); 11 (asserting that Tenth Circuit disciplinary sanctions were criminal, that attorney dis-

ciplinary proceedings are quasi-criminal, and that he was "therefore entitled to a full criminal process," including right to jury trial); 14 (contending that Tenth Circuit violated his Fifth Amendment right against double jeopardy); 17–18 (urging that Tenth Circuit was required to prove beyond reasonable doubt that he had violated court's suspension order); 18 (maintaining that punishment imposed by Tenth Circuit was so excessive and disproportionate as to amount to cruel and unusual punishment, in violation of Eighth Amendment); 24–26 (asserting that orders denying petitions for writ of habeas corpus and motions to vacate, set aside, or correct sentence of Tenth Circuit suspended the Writ of Habeas Corpus); 30–31 (contending that he has Sixth Amendment right in instant reciprocal discipline proceeding to trial by jury and Fifth Amendment right to independent prosecutor who would be required to prove charges beyond a reasonable doubt). At oral argument, Smith contended that the Tenth Circuit should have afforded him full criminal process because the sanction imposed through its disciplinary proceeding—disbarment for conduct violative of a suspension order—was effectively a form of punishment for criminal contempt.[2]

We disagree with Smith's overly-broad invocation of the rights that apply in criminal cases. "Disbarment or suspension proceedings are adversarial and quasi-criminal in nature." *Dailey v. Vought Aircraft Co.,* 141 F.3d 224, 229 (5th Cir. 1998) (citing *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)). Therefore, "an attorney is entitled to procedural due process which includes notice and an opportunity to be heard[.]" *Id.*

---

(2) if an attorney fails to maintain the right to practice law before the highest court of at least one state or the District of Columbia, unless the member's failure to maintain such right results from nonpayment of dues or failure to meet continuing legal education requirements.

**2.** To the extent this argument exceeds the grounds set forth in Smith's written response,

we could disregard it. In our June 16, 2000 order, we directed Smith to "file a brief that sets out the grounds on which he relies to contend, under the factors of [*Selling*], that the panel should not revoke his membership in the bar of this court." Order at 1–2. We have nevertheless considered this contention.

(citing cases). The *Selling* factors, which we discuss in detail below and which apply to reciprocal discipline proceedings, ensure that an attorney receives the right to procedural due process and to an opportunity to be heard. Indeed, the first *Selling* element—which inquires whether a disciplined attorney was denied due process because of an absence of notice or an opportunity to be heard—can be traced to these rights. *See Ruffalo*, 390 U.S. at 550, 88 S.Ct. 1222 ("Therefore, one of the conditions this Court considers in determining whether disbarment by a State should be followed by disbarment here is whether 'the state procedure from want of notice or opportunity to be heard was wanting in due process.'" (quoting *Selling*, 243 U.S. at 51, 37 S.Ct. 377)). While we have found in our research other components of the rights to notice and to be heard—the right to notice of the charge before the proceedings commence, *see Ruffalo*, 390 U.S. at 551, 88 S.Ct. 1222, and the right to have ambiguities in disciplinary rules strictly construed in favor of the attorney, *see United States v. Brown*, 72 F.3d 25, 29 (5th Cir.1995)—we have located no authorities, and Smith has cited none, in which attorneys subject to reciprocal discipline proceedings are accorded the complete array of rights accorded criminal defendants. In fact, several courts have held that "the due process rights of an attorney in a disciplinary proceeding do not extend so far as to guarantee the full panoply of rights afforded to an accused in a criminal case." *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir.2000); *see In re Palmisano*, 70 F.3d 483, 486 (7th Cir.1995) (holding that "*Ruffalo* does not require courts to employ the procedures of the criminal law in disbarment matters"); *Rosenthal v. Justices of the Supreme Court of California*, 910 F.2d 561, 564 (9th Cir.1990) (holding that "normal protections afforded a criminal defendant do not apply" to lawyer disciplinary proceeding).[3] The Fifth Circuit has repeatedly rejected the characterization of attorney discipline proceedings as criminal, holding that although disbarment is quasi-criminal in nature, "the imposition of disciplinary sanctions itself implicates an independent and fundamental duty of the district court—the supervision of the attorneys who practice as members of its bar—in ways that other sanctions simply cannot." *Crowe v. Smith*, 151 F.3d 217, 230 (5th Cir.1998); *see also Cunningham v. Ayers*, 921 F.2d 585, 586 (5th Cir.1991) ("Disbarment proceedings are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice.") (citations omitted).

We therefore specifically reject Smith's contention that he is entitled under the Sixth Amendment to a jury trial or to a full evidentiary hearing at which an independent prosecutor would be required to prove the charges against him beyond a reasonable doubt[4] and Smith would have the opportunity to present evidence. We also strike his "jury demand."

### III

■ We now consider whether we should revoke Smith's membership in the bar of this court. "It is not uncommon

---

3. Although these cases involve attorney discipline proceedings rather than reciprocal disbarment actions, we find the distinction to be immaterial in deciding whether attorneys enjoy the rights of criminal defendants.

4. In *In re Medrano* the Fifth Circuit held that "[a] federal court may disbar an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this extreme sanction." *In re Medrano*, 956 F.2d 101, 102 (5th Cir.1992). *Medrano* involved an allegation of attorney misconduct, not a reciprocal discipline proceeding. It cited *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696 (5th Cir.1990), which likewise was not a reciprocal discipline matter. Nothing in *Selling* requires that we conduct our review under the clear and convincing evidence standard, and we hold that *Medrano* does not command that we do.

that district courts generally impose discipline on members of their bar who are disciplined in another jurisdiction." *In re Kramer*, 193 F.3d 1131, 1132 (9th Cir. 1999). "[W]hen a district court learns that a member of its bar has been subject to discipline by another jurisdiction, the identical discipline is typically imposed." *In re Hoare*, 155 F.3d 937, 940 (8th Cir.1998). In *In re Dawson*, 609 F.2d 1139 (5th Cir. 1980), the Fifth Circuit addressed the standards for imposing discipline in federal court based on a state court disbarment order.

> Supreme Court precedent has established that a state court disbarment should be accorded federal effect, unless it appears from "an intrinsic consideration of the state record" (1) that the state proceeding was wanting in due process, (2) that the proof in the state proceeding was so infirm "as to give rise to a clear conviction on our part that we could not consistently with our duty, accept" the state court's conclusion as final, or (3) that to do so would "that for some other ·grave reason ... conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do."

*Id.* at 1142 (quoting *Selling*, 243 U.S. at 51, 37 S.Ct. 377, and citing cases). Other circuits concur in this approach. *See, e.g., In re Attorney Discipline Matter*, 98 F.3d 1082, 1087–88 (8th Cir.1996) ("[A] district court, when determining whether to discipline a member of its bar consistent with a state disciplinary adjudication, may impose reciprocal discipline unless, after an independent consideration of the record, the court finds (1) a deprivation of due process; (2) a lack of adequate proof establishing misconduct; or (3) that the imposition of reciprocal discipline would result in grave injustice."). Our court held *en banc* that these standards apply when a federal court considers disbarment based on a federal court order. *See Smith*, 100 F.Supp.2d at 416 ("at least one federal circuit court has applied the *Selling* factors when considering disbarment based on a federal district court's disbarment order. ... We will therefore apply the *Selling* factors in this proceeding.") (citing *In re Evans*, 834 F.2d 90, 91 (4th Cir.1987)).

In determining whether reciprocal discipline ·is warranted, we must conduct intrinsic review of the underlying records in the relevant tribunals. *See Greer's Refuse Servs., Inc. v. Browning–Ferris Indus.*, 782 F.2d 918, 923 (11th Cir.1986). We hold that our assessment of the *Selling* factors can be confined to intrinsic review of the record developed in the Tenth Circuit disciplinary proceedings. As the *en banc* court noted, "[t]he disciplinary action that brings Smith before us today originated more than six years ago in the United States Court of Appeals for the Tenth Circuit." *Smith*, 100 F.Supp.2d at 414. The sanctions that the State of Colorado imposed against Smith were themselves forms of reciprocal discipline based on the Tenth Circuit's orders. *See Smith*, 100 F.Supp.2d at 415 (noting that State of Colorado conducted reciprocal disciplinary proceeding based on Tenth Circuit's suspension order and that Supreme Court of Colorado disbarred Smith based on the Tenth Circuit's disbarment order). Although the Supreme Court of the United States disbarred Smith based on his failure to comply with one of its orders, *see* App. 3713,[5] it did so in a case that emanated from the Tenth Circuit.[6] We may act

---

**5.** Citations to the appendix are to the appendix of underlying records of the disbarment proceedings conducted in the Supreme Court, the Tenth Circuit, and the State of Colorado that Smith submitted in compliance with our June 16, 2000 order.

**6.** In *James Edward Qualls and David L. Smith v. Regional Transportation District, et al.*, No.

94–1283, the Supreme Court granted respondents' motion for an order to show cause and directed that Smith pay respondents the sum of $500, as the Court had ordered on March 6, 1995, and that he show cause in writing why he should not be disbarred or otherwise disciplined for failing to comply with the order. App. 3713. The Court suspended him

based on the Tenth Circuit's disciplinary decision alone because Rule 83.8(a)(1)(C) provides for revocation of bar membership if a member loses the right to practice law before any federal court. Accordingly, we need only decide whether the Tenth Circuit's February 13, 1996 disbarment order warrants revoking Smith's membership in this court's bar.[7]

## IV

■ Under the first *Selling* factor, we consider whether the Tenth Circuit's procedure denied Smith due process because of an absence of notice or opportunity to be heard.

## A

Various panels of the Tenth Circuit found that Smith had filed four frivolous appeals. *See In re Smith,* 10 F.3d 723, 724 (10th Cir.1993) (per curiam). The Tenth Circuit notified Smith that it was contemplating sanctioning him. It considered briefing and conducted oral argument before suspending him on November 29, 1993 from practicing in the Tenth Circuit until he satisfied all sanctions that had been imposed against him by that court and by the District of Colorado. *See id.*[8]

On February 13, 1996 the Tenth Circuit disbarred Smith for violating its November 29, 1993 suspension order. The panel found that Smith had continued to practice in that court by writing and filing briefs on behalf of otherwise *pro se* litigants. *In re Smith,* 76 F.3d 335, 336 (10th Cir.1996) (per curiam).[9] The court disbarred him after finding that "[d]espite repeated warnings, Mr. Smith has chosen not to heed the orders of this court." *Id.*[10] Before doing so, the panel issued an order requiring that he show cause why he should not be disbarred for violating the suspension order and practicing in the Tenth Circuit without authorization. *Id.* at 335. Smith responded in writing to the order. *Id.* The show cause order was itself "the culmination of th[e] court's efforts to have Mr. Smith explain his involvement in [the] appeals." *Id.* at 336. The circuit court disciplined him after considering his response and issuing a published order that explained its reasons for doing so. *See id.*

## B

Without linking his assertion to any particular *Selling* factor, Smith argues that the Presiding Officer of the Colorado Supreme Court Grievance Committee that considered the reciprocal disciplinary complaint against him engaged in misconduct by improperly precluding him from presenting certain affirmative defenses and

---

from practice pending consideration of his response. *Id.* Following submission of his response, the Court on November 27, 1995 disbarred him from practicing law in the Supreme Court. *Id.* at 3715; *see In re Disbarment of Smith,* 516 U.S. 984, 116 S.Ct. 510, 133 L.Ed.2d 420 (1995). On January 16, 1996 the Supreme Court denied rehearing, *In re Disbarment of Smith,* 516 U.S. 1085, 116 S.Ct. 801, 133 L.Ed.2d 748 (1996), and on March 18, 1996 denied his motion to recall and amend the judgment, *In re Disbarment of Smith,* 516 U.S. 1168, 116 S.Ct. 1257, 134 L.Ed.2d 206 (1996).

**7.** Accordingly, we need not address Smith's contention that we cannot base reciprocal discipline on the disbarment order of the Supreme Court of the United States because he was acquitted in the Colorado Supreme Court of all charges of professional misconduct in connection with the disbarment proceedings conducted in the Supreme Court of the United States, *see* Br. at 27, nor need we consider Smith's contention that we cannot impose reciprocal discipline based on the disbarment order of the Colorado Supreme Court because that order was itself a form of reciprocal discipline, *see id.* at 26–27.

**8.** The Supreme Court of the United States denied Smith's petition for a writ of certiorari concerning that ruling. *In re Smith,* 513 U.S. 807, 115 S.Ct. 53, 130 L.Ed.2d 13 (1994).

**9.** Smith applied for reinstatement in 1994, which the court denied. *See id.*

**10.** The Supreme Court denied Smith's petition for a writ of certiorari concerning the disbarment order. *In re Smith,* 519 U.S. 871, 117 S.Ct. 186, 136 L.Ed.2d 125 (1996).

mitigating circumstances to the charges. Br. at 11. These are: (1) that the Tenth Circuit's sanctions were criminal rather than civil, thus entitling him to full criminal process, including the right to a jury trial; (2) that the Tenth Circuit limited his opportunity to be heard to a verified response to its order to show cause, in violation of Fed. R.App. P. 46; (3) that the Tenth Circuit deprived him of due process under the Fifth Amendment by depriving him of an evidentiary hearing, as required by Rule 46, and by convicting him of practicing in that court without authorization, which was not charged in the show cause order; (4) that the Tenth Circuit violated Smith's Fifth Amendment protection against double jeopardy by acquitting him of the charge of ghostwriting briefs but then convicting him of writing briefs on behalf of third parties while suspended from the bar; (5) that he was deprived of a fair and impartial decisionmaker because the fairness and impartiality of the panel that suspended him on November 29, 1993, in violation of his rights, might reasonably be questioned, thereby requiring that the panel disqualify itself, and because the panel refused to address his complaints of judicial misconduct under 28 U.S.C. § 372(c); (6) that the Tenth Circuit deprived Smith of effective review of the November 29, 1993 suspension order before convicting and punishing him for violating the order; and (7) that the Tenth Circuit was required, but failed, to prove beyond a reasonable doubt that he had violated the suspension order, thus violating his Fifth Amendment right to due process.

Although the contentions appear to be advanced to support his challenge to the State of Colorado disciplinary proceeding, which we are not considering today, we will assume that Smith also posits them concerning the first *Selling* factor. Having already concluded that the special protections unique to criminal defendants do not apply to attorneys in disbarment proceedings, *see supra* § II, we reject Smith's arguments that he was entitled to a jury trial, that the Tenth Circuit violated his Fifth Amendment protection against double jeopardy, and that the court violated his due process rights when it did not base its decision on proof beyond a reasonable doubt. Regarding Smith's contention that the Tenth Circuit violated his due process rights and Rule 46 by not convening an evidentiary hearing, we note that due process in attorney disbarment proceedings "includes notice and opportunity to be heard[.]" *Dailey*, 141 F.3d at 229. Smith admits that the Tenth Circuit gave him notice of the charges and allowed him an opportunity to respond in writing. *See* Br. at 14. Furthermore, Smith's disbarment was preceded by a suspension order that the Tenth Circuit issued following a hearing that did include a Rule 46–type oral argument. *See Smith*, 10 F.3d at 724. This procedure satisfied due process under *Selling*. Because these arguments fail, we also reject Smith's contention that one could reasonably question the impartiality of the Tenth Circuit panel. Smith's sole support for this assertion is the court's refusal to afford him full criminal process and an evidentiary hearing. *See* Br. at 14–15. Finally, Smith cites no cases, and we have found none, that support his contention that he was deprived of due process because he did not receive effective review of the November 29, 1993 suspension order.

Following intrinsic review of the record that Smith has presented to us, and of the published opinions of the Tenth Circuit, we find that the circuit court afforded Smith the required notice and opportunity to be heard before suspending him on November 29, 1993 and disbarring him on February 13, 1996. Because the Tenth Circuit complied with due process in these respects, it is immaterial for our purposes that it did not conduct an evidentiary hearing.

Smith also relies on proceedings in the Tenth Circuit and in the United States District Court for the District of Colorado

that he maintains were flawed but that occurred after the Tenth Circuit disbarred him, such as those courts' rulings on two petitions for a writ of habeas corpus and motions to vacate, set aside, or correct sentence, and a petition for a writ of mandamus or prohibition. We need not consider these arguments because *Selling* requires that we consider whether the Tenth Circuit denied Smith due process because of the absence of notice or an opportunity to be heard before, not after, disbarring him.

## V

■ We next determine under the second *Selling* factor whether the proof in the Tenth Circuit proceeding was so infirm as to lead to a clear conviction on our part that we could not, consistently with our duty, accept that court's conclusion as final.

Smith devotes little attention to this factor in his written response.[11] During oral argument, however, Smith maintained that the record lacks any evidence to support a finding that he violated the Tenth Circuit suspension order. We find from our intrinsic review that the proof is not so infirm as to lead to a clear conviction that we cannot, consistently with our duty, accept that court's conclusion as final.

After the Tenth Circuit suspended Smith, he continued to file briefs, doing so in at least four instances for allegedly *pro se* appellants. *See Smith,* 76 F.3d at 336. On July 18, 1995 the Tenth Circuit issued an order directing him to state under oath whether he had authored two briefs for *pro se* appellants and to state under oath

who had written two specific joint *pro se* briefs and five other appeals, filed since November 29, 1993, in which Smith and/or one of his clients had filed a *pro se* brief. *See* App. 1252. Dissatisfied with Smith's response to that order, on September 21, 1995 the court filed another order directing that he state under oath "the extent of the assistance he provided the pro se appellants in preparing the briefs in each of the cases referenced above." *Id.* at 1254.[12] Smith admitted in a verified response that he had written and submitted the briefs after the suspension order took effect, but argued *inter alia* that he had not violated the order because he actually signed two of the briefs and included footnotes in two others in which he acknowledged his involvement. *See* App. 1247–49. In light of Smith's admission, the Tenth Circuit found that, "[i]n writing and filing briefs on behalf of otherwise pro se litigants, [Smith] had violated [the court's suspension] order" after the court had advised him, "in very clear terms, that he no longer had permission to practice law in th[e] court" and "was told he could not act as an attorney for his clients and former clients." *Smith,* 76 F.3d at 336.[13] We find from our intrinsic review that the proof is not so infirm as to lead to a clear conviction that we cannot, consistently with our duty, accept the Tenth Circuit's conclusion as final.

## VI

The third *Selling* factor requires that we assess whether there is a grave reason not to disbar Smith. We find none from our consideration of the record and Smith's arguments.[14]

11. As we explain at note 2, while we could disregard an argument first raised during oral argument, we will address it.

12. The court stated that although Smith's "failure to properly respond to the July 18 order could clearly be viewed as grounds for a finding of contempt[,]" the court "out of an abundance of concern for [Smith's] due process rights, [would] offer [Smith] a final opportunity to provide the information ordered by this court." App. 1254.

13. Smith asserts that the Tenth Circuit was required to prove its claims beyond a reasonable doubt. We hold above that it was not, and thus conclude that the proof was not infirm on this basis.

14. Smith does not cite a specific case in which a court has relied on the "grave reason" component of *Selling* to decline to impose reciprocal discipline. We have found only one in our research, and it is distinguishable on its facts. *See Theard v. United States,*

■ Although he does not assert them under the rubric of the third *Selling* component, Smith argues that (1) the Tenth Circuit's punishment is so excessive and disproportionate in comparison to the seriousness of his misconduct as to amount to cruel and unusual punishment under the Eighth Amendment; (2) by disciplining him for writing briefs and otherwise assisting clients with their appeals, the Tenth Circuit punished him for engaging in activities protected by his and his clients' First Amendment rights to freedom of speech and association and to petition the government for redress of grievances; and (3) that the Tenth Circuit convicted and punished him for fulfilling his ethical obligation to his clients. We will assume that we should evaluate these arguments under the "grave reason" standard.[15]

We are aware of no case, and Smith has cited none, in which a court has applied the Eighth Amendment to a disbarment proceeding. To the contrary, the Supreme Court has interpreted the Amendment "to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments." *Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). Disbarment is not a criminal prosecution. *Cf. Ruffalo*, 390 U.S. at 551, 88 S.Ct. 1222. Therefore, we conclude that Smith's claim "is without merit since the [E]ighth [A]mendment does not apply where loss of a license is the full extent of possible punishment." *Verner v. State of Colorado*, 533 F.Supp. 1109, 1118 (D.Colo.1982).

■ Smith's First Amendment argument is similarly unpersuasive. Courts have "historically regulated admission to the practice of law before them and exercised the authority to discipline and ultimately to disbar lawyers whose conduct departed from prescribed standards." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). "Membership in the bar is a privilege burdened with conditions." *Id.* (quoting *In re Rouss*, 221 N.Y. 81, 116 N.E. 782, 783 (N.Y.1917)). As such, the power of a court to discipline a member licensed to practice before it "is too well established to conceivably be doubted." *In re Sarelas*, 360 F.Supp. 794, 795 (N.D.Ill.1973). Smith's disbarment arguably does not even raise First Amendment concerns, because the issue is whether he is qualified to practice law, not whether a court has disciplined him for engaging in protected expression or association. *See Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1386 (7th Cir.1992) ("Any abridgment of the right to free speech [by regulating the practice of law] is merely the incidental effect of observing an otherwise legitimate regulation."). Even if Smith's disbarment does implicate First Amendment protections, we hold that the Tenth Circuit's interest in maintaining the integrity of the judicial process by disciplining attorneys who intentionally disregard the terms of their suspensions outweighs any supposed infringement of First Amendment rights.[16]

■ Finally, Smith's suggestion that his duty as a zealous advocate is incompatible with his role as an officer of the court lacks force. The Tenth Circuit suspended Smith in part for filing frivolous appeals.

354 U.S. 278, 282, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957) (declining to impose same discipline as did state court 18 years earlier when it disbarred attorney who was then suffering from extreme mental illness).

15. Our decision to do so is supported by the fact that, at oral argument, Smith asserted under the "grave reason" component that disbarment was an excessive punishment, even assuming *arguendo* that he had violated the Tenth Circuit's suspension order.

16. Smith's argument that his disbarment violates his and his clients' freedom of association and right to petition the government for redress of grievances also fails. The cases that Smith cites, *see* Br. at 18–19, involve almost exclusively efforts by government entities or public officials effectively to bar access to the courts.

It is beyond peradventure that "[w]hile an attorney has an ethical obligation to be a zealous advocate for the client's cause, this does not mean that an attorney has license to proceed with a frivolous case on behalf of the client." *Perreira v. Secretary of Dep't of Health & Human Servs.*, 27 Fed. Cl. 29, 35 (Fed.Cl.1992). The American Bar Association's Model Rules of Professional Conduct, which provide *inter alia* that an attorney "shall not bring or defend a proceeding ... unless there is a basis for doing so that is not frivolous," acknowledge the compatibility of a lawyer's ethical duties to his client and the court, since these rules also characterize a lawyer as a zealous advocate. *See* Model Rules of Prof'l Conduct R. 3.1, Preamble (1983).

The Tenth Circuit disbarred Smith because, after it had suspended him, he continued in at least four instances to file briefs for allegedly *pro se* appellants, despite the court's advice, "in very clear terms, that he no longer had permission to practice law in th[e] court" and "was told he could not act as an attorney for his clients or former clients." *Smith*, 76 F.3d at 336. We are not persuaded that this form of discipline is so excessive that it presents a grave reason not to impose reciprocal discipline.

At oral argument, Smith asserted as a grave reason that Rule 83.8(a) is unconstitutional. He maintains that it is unconstitutional on its face because it provides for automatic revocation of his bar membership, and is unconstitutional as applied because it does not afford him a right to an evidentiary hearing. The *en banc* court rejected Smith's contention that Rule 83.8(a) is unconstitutional, *see Smith*, 100 F.Supp.2d at 413–14, and we are bound by

its decision. Moreover, we have already explained why he is not entitled to an evidentiary hearing in this reciprocal discipline proceeding.

We conclude that there is no grave reason for refusing to give effect to the Tenth Circuit's disbarment order.

## VII

Apart from his actual or apparent discussion of the *Selling* factors, Smith challenges the procedure by which we are conducting the instant reciprocal discipline proceeding.[17]

■ We disagree with his assertion that oral argument is insufficient, because "[i]t is settled law that a *de novo* evidentiary hearing is not a prerequisite" where the *Selling* factors are met. *In re Jafree*, 759 F.2d 604, 605 n. 1 (7th Cir.1985) (per curiam). We have opted to employ a Rule 46(b)-type procedure in this case. The hearing contemplated by Rule 46(b) is in the nature of an oral argument, "not an opportunity to retry the [previous] case." *Id.* Smith is also mistaken in contending that we are violating his Fifth Amendment due process rights by acting as judge, jury, and prosecutor. In disbarment proceedings, "[t]he combination of investigative and adjudicative functions in one government agency does not, without more, constitute a due process violation." *In re Crooks*, 51 Cal.3d 1090, 275 Cal.Rptr. 420, 800 P.2d 898, 904 (1990) (per curiam) (citing *Withrow v. Larkin*, 421 U.S. 35, 52–54, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)).

Citing Tex.R. Disciplinary Prof'l Conduct 15.08, *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G. app. A.1 (West 1998) (Tex. State Bar R. art. X, § 9),[18]

No attorney licensed to practice law in Texas may be disciplined for Professional Misconduct occurring more than four years before the time when the allegation of Professional Misconduct is brought to the attention of the Office of Chief Disciplinary Counsel, except in cases in which disbarment or suspension is compulsory. Limitations will not begin to run where fraud or

---

**17.** We address in § II Smith's contention that attorney disciplinary proceedings are criminal in nature and that he is entitled in this tribunal to certain rights of criminal defendants. We address in this section of our opinion his other challenges to our procedure.

**18.** Rule 15.08:

Smith posits that we cannot discipline him because the alleged misconduct occurred more than four years before it was brought to this court's attention. We disagree. "Federal courts admit and suspend attorneys as an exercise of their inherent power; the standards imposed are a matter of federal law." *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). We are determining whether we should discipline Smith pursuant to Rule 83.8(a)(1)(C) and the *en banc* court's order, not under the rules and standards of the State Bar of Texas. Rule 15.08 simply plays no role in our decision.

Smith also maintains that the misconduct for which the Tenth Circuit disciplined him is not misconduct under Rule 83.8(e) of this court.[19] This argument is also misplaced. Although Rule 83.8(e), which defines "unethical behavior," is relevant to Rule 83.8(b)(3), which *inter alia* permits a presiding judge to take disciplinary action against a member of the bar for unethical behavior, we are revoking Smith's membership under the reciprocal discipline proviso of Rule 83.8(a)(1)(C).

Before we convened oral argument in this matter, Smith filed a motion to dismiss reciprocal discipline charges with prejudice. He reiterates the contention that we are violating his right to due process of law by failing to appoint an independent prosecutor, thereby combining prosecutorial and judicial functions, and by denying him an evidentiary hearing. Mot. Dis. at 3. We reject these arguments for reasons we have already set out above. Smith also asserts that the Chief Disciplinary Counsel of the Texas Commission for Lawyer Discipline has nonsuited a pending reciprocal disciplinary case against him, and that the effect of this court's decision to continue disciplinary

proceedings without convening an evidentiary hearing is effectively to reverse the Chief Disciplinary Counsel's decision not to prosecute him. *Id.* at 4. We find this argument to be immaterial because we are basing our decision on the disbarment order of the Tenth Circuit. The decision of the Chief Disciplinary Counsel of the Texas Commission for Lawyer Discipline not to seek reciprocal discipline is not controlling. As we have explained, "when a district court learns that a member of its bar has been subject to discipline by another jurisdiction, the identical discipline is typically imposed." *Hoare*, 155 F.3d at 940. After considering the *Selling* factors and finding no impediment to doing so, we are empowered to impose the same discipline against Smith as did the Tenth Circuit, regardless whether disciplinary counsel in another forum chose for her own unstated reasons not to prosecute him. We deny Smith's motion to dismiss.

## VII

We revoke Smith's membership in the bar of this court. We direct the clerk of this court to provide copies of this order to the Clerk of the United States Court of Appeals for the Fifth Circuit and to the Office of Chief Disciplinary Counsel of the Texas Commission for Lawyer Discipline. Within 15 days of the date this order is filed, Smith shall provide written notice to all parties whom he represents in cases currently pending in this court that his membership in the bar of this court has been revoked and that he is no longer permitted to represent them.

**SO ORDERED.**

---

concealment is involved until such Professional Misconduct is discovered or should have been discovered in the exercise of reasonable diligence by the Complainant.

**19.** Rule 83.8(e):

The term "unethical behavior," as used in this rule, includes any conduct that violates any code, rule, or standard of professional conduct or responsibility governing the conduct of attorneys authorized to practice law in the State of Texas.