**In re James A.H. BELL.**

**No. 1:10–mc–002.**

United States District Court,
E.D. Tennessee,
at Chattanooga.

April 9, 2010.

W. Morris Kizer, Gentry, Tipton & McLemore, PC, Knoxville, TN, for James A.H. Bell.

### *MEMORANDUM & ORDER*

CURTIS L. COLLIER, Chief Judge.

On August 13, 2009, United States Magistrate Judge C. Clifford Shirley found Re-

spondent James A.H. Bell ("Respondent") guilty of criminal contempt (*In re James A.H. Bell,* Case No. 3:08–mc–04, Court File No. 13) relating to his representation of criminal defendant Johnny Martin in United States District Court for the Eastern District of Tennessee in Knoxville, Tennessee, in *United States v. Briddy,* Case No. 3:07–cr–51. Thereafter, on November 17, 2009, the Court issued a show cause order initiating formal disciplinary proceedings against Respondent pursuant to E.D. TN. L.R. 83.7 (Court File No. 1). On December 7, 2009, Respondent filed his response to the show cause order. (Court File No. 2). In his response, Respondent admitted the substance of the allegations in the show cause order but stated his misrepresentations were not intentional. Respondent requested a hearing and the opportunity to present additional evidence. On March 30, 2010, Respondent filed an amendment to his response to the show cause order (Court File No. 6).

The hearing requested by Respondent was held on March 30, 2010. At that hearing Respondent introduced 15 exhibits and called 10 witnesses, including himself, to testify.

After considering Respondent's response to the show cause order, his amended response, the exhibits and witness testimony presented at the hearing, and the arguments advanced at the hearing, for the following reasons the Court

determines that disciplinary action is warranted and that the appropriate disciplinary action is an **ADMONITION** of Respondent. Further, Respondent is **ORDERED** to offer to give ten lectures on ethics and civility to local bar associations and law schools within the next two years and file semiannual status reports to the Court describing his efforts to comply with this Order.

## I. PROCEDURAL HISTORY AND BACKGROUND

### A. The Show Cause Order

The show cause order [1] alleged the conduct subject to discipline took place in a case where Johnny Martin ("Martin") was charged in a federal indictment, along with multiple codefendants, with conspiring to distribute cocaine hydrochloride, as well as other drug and firearm offenses (Case No. 3:07–cr–51, Court File Nos. 1, 8, 106, 224).[2] Attorney Dennis B. Francis was first appointed to represent Martin (Court File No. 22), but moved to withdraw due to irreconcilable differences (Court File No. 117). Magistrate Judge C. Clifford Shirley held a hearing and granted the motion to withdraw, appointing Respondent as Martin's counsel (Court File Nos. 120, 121, 278). At the hearing, Judge Shirley inquired as to any potential conflicts that might cause Respondent to withdraw from representation in the future (Court File

---

**1.** Attorney disciplinary actions in federal courts are usually initiated by show cause orders. *See, e.g.,* Sup.Ct. R. 8 (2010) ("After reasonable notice and an opportunity to show cause why disciplinary action should not be taken, and after a hearing if material facts are in dispute, the Court may take any appropriate disciplinary action against any attorney who is admitted to practice before it for conduct unbecoming a member of the Bar or for failure to comply with these Rules or any Rule or order of the Court."); 6th Cir. R. 46(b)(3) ("Formal disciplinary proceeding pursuant to this rule shall be initiated by the

issuance of an order to show cause, signed by the Chief Judge or the clerk of this Court, acting at the direction of the Chief Judge."); Rules of Attorney Disciplinary Enforcement for the Court of Appeals for the First Circuit, Rule V, Disciplinary Proceedings; *In re Cook,* 551 F.3d 542, 552 (6th Cir.2009); *In re Moncier,* 550 F.Supp.2d 768, 771 (E.D.Tenn. 2008); *In re Smith,* 123 F.Supp.2d 351, 353–54 (N.D.Tex.2000).

**2.** Unless otherwise noted, all citations to docket filings related to the Martin prosecution are to Case No. 3:07–cr–51.

No. 278, p. 4). Respondent informed Judge Shirley he had previously represented Joseph Louis Cofer ("Joe Cofer") in two state trials and Joe Cofer had come to see Respondent when he was arrested on a drug charge (Case No. 3:07–cr–37) tangentially related to the conspiracy that included Martin (*id.* at p. 6). Judge Shirley noted, and Assistant United States Attorney David Jennings ("Jennings") confirmed, Joe Cofer was not expected to testify in the case against Martin, although Joe Cofer's brother, James D. Cofer ("Boone Cofer") was expected to testify (*id.*). Based on these facts, Judge Shirley found, and Respondent and Martin agreed, a conflict did not exist (*id.* at p. 7).

Respondent later filed a motion to dismiss the charges against Martin for prosecutorial misconduct, alleging Joe Cofer was a necessary witness for a potential defense and Jennings knew a conflict of interest existed such that Respondent would be unable to represent Martin and call Joe Cofer as a witness for the defense (Court File No. 252, pp. 4–5). Jennings responded, denying any misrepresentations to the court and contending no connection existed between Martin and the Cofers (Court File No. 253). The next day, Respondent filed a motion to withdraw as Martin's counsel based on the same arguments as contained in the motion to dismiss (Court File No. 254). Judge Shirley held a hearing on the motions and Respondent reasserted he had represented Joe Cofer in the late 1980s and had met with him concerning representation on the 3:07–cr–37 indictment (Court File No. 263, p. 8). Respondent stated he had confidential communications with Joe Cofer, talked on the phone to Jennings about the case against Joe Cofer, and ultimately decided not to take the case (*id.* at pp. 8–9). Respondent asserted the redesignation of parties in transcripts of wiretapped phone calls provided by the government created a conflict by linking Martin's case to the Cofers' cases and Martin was entitled to raise the defense that he was not involved in the conspiracy charged in the indictment, but was involved in a separate conspiracy involving the Cofers (*id.* at pp. 10–12, 29, 53–54). In the hearing, Respondent repeatedly asserted he had met and had confidential communications with Joe Cofer concerning the 3:07–cr–37 case (*id.* at pp. 8–9, 41–43). He also stated he had an ongoing professional relationship with Joe Cofer from the 1980s to the present (*id.* at p. 55). Because of the meeting with Joe Cofer and Respondent's relationship with Joe Cofer, Respondent asserted continued representation of Martin would violate his duty of loyalty and prevent Martin from receiving effective assistance of counsel (*id.* at pp. 57–59).

Jennings also remembered a phone call with Respondent, where Respondent told him Joe Cofer had come by to see him about representation on a new drug charge, Jennings summarized the case against Joe Cofer and Respondent stated he would not be taking the case, but Jennings asserted a meeting at Respondent's office between Joe Cofer and Respondent would have been impossible, since Joe Cofer was arrested and remained in jail on the drug charge (*id.* at pp. 66–67). In response to this, Respondent elaborated on the nonconfidential portions of his meeting with Joe Cofer, describing what Joe Cofer was wearing and some of the topics of conversation (*id.* at pp. 78–79). Respondent reiterated Joe Cofer came to his office, with his girlfriend and a child, who left before Joe Cofer and Respondent discussed the case (*id.* at p. 79). Respondent stated, "Now if this [meeting] happened before he went to jail or after he went to jail, I don't know. Or if the DEA has run him up here, I don't know" (*id.*). Judge Shirley convened the hearing without ruling on the motions, instead asking Jen-

nings and Respondent to check their records to see if they could determine the date of the purported meeting between Respondent and Joe Cofer (*id.* at p. 91). Judge Shirley also asked Respondent to file a description of the nature and extent of the conflict and to contact the Board of Professional Responsibility ("Board") to see when the Board would make a decision on whether Respondent had a conflict (*id.* at pp. 92–94).

In response to Judge Shirley's order, Jennings indicated his records were of no assistance in determining the date of the phone call with Respondent (Court File No. 257), however, Jennings attached affidavits from the case agent for Joe Cofer's case and a United States marshal to show Joe Cofer was taken into and remained in custody since his arrest following a search of his home on March 29, 2007 (Court File No. 259). Jennings also submitted a signed statement from Joe Cofer indicating he never contacted or met with Respondent or anyone from Respondent's office since Respondent represented him in the 1980s (Court File No. 261). Respondent filed multiple notices of compliance and ultimately indicated the Board determined he had a conflict in the instant case, even if he had not communicated with Joe Cofer since the 1980s (Court File Nos. 262, 266). Respondent continued to assert he could not "effectively present a defense that Mr. Martin participated in a conspiracy separate from the charged conspiracy without divulging confidential information received from Mr [Joe] Cofer" (Court File No. 266, p. 2). Respondent stated he was unable to confirm a meeting with Joe Cofer, although Respondent represented him in 1992 and believed Joe Cofer had visited his office "within the last few years" (*id.* at p. 6). Despite Joe Cofer's statement, Respondent said he "truly *believes* that [he] met with Mr. [Joe] Cofer. If this belief is untrue, it results from a sincere and severe confusion and mistake on the part of [Re-

spondent]" (*id.*). Finally, Respondent indicated Joe Cofer's girlfriend, Debel Manuel, a person believed to be Mr. Cofer's adult son, and an unidentified male, were present at a meeting with Respondent on April 2, 2007, at around 8:30 a.m. (*id.* at p. 7).

At a hearing on the motion to dismiss and the motion to withdraw, Judge Shirley ruled Respondent had not shown prosecutorial misconduct and denied the motion to dismiss (Court File Nos. 268, 272, p. 19). Judge Shirley "reluctantly" granted the motion to withdraw based on Respondent's assertions continued representation would result in a breach of his ethical duties and ineffective assistance of counsel (Court File Nos. 268, 272, p. 22).

On August 13, 2009, Judge Shirley found Respondent guilty of criminal contempt beyond a reasonable doubt. (Case No. 3:08–mc–004, Court File No. 13).

On the basis of the preceding facts, it appeared to the Court Respondent had both "violated the Rules of Professional Conduct as adopted by the Supreme Court of Tennessee [and had] engaged in unethical conduct tending to bring the court or the bar into disrepute."

### B. Respondent's Response

In his response, Respondent addressed each factual allegation in the show cause order. He admitted he did make the misrepresentation set out in the show cause order. However, he explained that his "personal belief is that he did not make a knowingly false statement of fact at the time it was made." He also stated he did not intend to make a misrepresentation to the court. Nevertheless, Respondent conceded that his statements to the court and his belief regarding the facts were not correct. He also conceded the facts provide support for Judge Shirley's findings.

Respondent requested a hearing on the allegations.

### C. Hearing

The requested hearing was held on March 30, 2010. Attorney W. Morris Kizer represented Respondent. At the hearing Respondent introduced 15 exhibits and called as witnesses 1) attorney Dan R. Smith, 2) Michael Capps, 3) Lora Ledford, Respondent's long time employee and office manager, 4) Debra Daughtery, part-time employee, 5) attorney Robert Simpson, 6) Steve Brackett, a personal friend and business associate, 7) attorney Paula Ham, 8) attorney Tom Dillard, 9) Respondent's pastor Rev. Max Reddick, and 10) Respondent. In general all nine of Respondent's witnesses testified he is a generous and giving person, and is a truthful person. Ms. Ledford and Rev. Reddick testified that Respondent is deeply remorseful for his actions before Judge Shirley.

Respondent testified as to his remorse, the personal toll the contempt proceedings had on him, and the lessons he has learned. Following the testimony Respondent was afforded an opportunity to make an argument and did so.

## II. DISCUSSION

Although Respondent has been found guilty of contempt of court, a criminal offense, by Magistrate Judge Shirley, the Court is basing its decision upon the underlying conduct, not the fact of conviction. See, e.g., *In re Moncier,* 550 F.Supp.2d 768, 772 n. 5 (E.D.Tenn.2008) ("While a conviction in and of itself is grounds for disciplinary action, the Court is not relying upon Respondent's conviction; rather, the Court is relying upon Respondent's unethical and unprofessional conduct at the November 2006 hearing. In other words, even if Respondent had not been convicted of criminal contempt, the Court would still have initiated disciplinary action based

solely upon Respondent's misconduct."). However, this does not mean the Court will disregard the fact of the conviction, it simply means the conviction is not determinative of the decision to initiate disciplinary action or the imposition of disciplinary action.

■ The fact that a prior criminal proceeding has occurred does not forestall attorney disciplinary action. Disciplinary action following a criminal prosecution does not run afoul of the Double Jeopardy Clause of the United States Constitution because disciplinary actions are not subsequent criminal prosecutions and they are not punitive. *In re Caranchini,* 160 F.3d 420, 423–24 (8th Cir.1998) ("Although disbarment may be considered punishment 'in common parlance,' we find that attorney discipline, including sanctions and disbarment, is not 'punishment' for purposes of the Double Jeopardy Clause.... Instead, attorney discipline is designed to protect the public and is therefore remedial in nature.") (citations omitted); *Marinangeli v. Lehman,* 32 F.Supp.2d 1, 8 (D.D.C.1998) ("While there is some case law that indicates disciplinary proceedings may be 'quasi-criminal' in nature, it is clear that administrate proceedings are not subject to the Double Jeopardy Clause.") (citations omitted).

### A. Finding of Attorney Misconduct

■ The Court finds by clear and convincing evidence that the allegations in the show cause order are correct, that is,

(a) Bell repeatedly misrepresented to the court that he had personally met with Joe Cofer concerning the 3:07–cr–37 case, had confidential communications with him, and had an ongoing professional relationship with him;

(b) Bell violated Tennessee Rule of Professional Conduct 3.1 and acted in an unprofessional and unethical manner by continuing to argue prosecutorial misconduct

although, after a reasonable inquiry, Bell should have known there was no basis to do so;

(c) Bell violated Tennessee Rule of Professional Responsibility 3.3 and acted in an unprofessional and unethical manner by knowingly making a false statement of fact to a tribunal;

(d) Bell violated Tennessee Rule of Professional Responsibility 8.4 and acted in an unprofessional and unethical manner by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(e) Bell violated Tennessee Rule of Professional Responsibility 8.4 and acted in an unprofessional and unethical manner by engaging in conduct that is prejudicial to the administration of justice; and

(f) Bell acted in an unprofessional and unethical manner and/or violated the Tennessee Rules of Professional Conduct.

These findings are based on Respondent's admissions in his response to the show cause order and the evidence in the record.

## B. Order of Disposition

Having determined that Respondent has acted in an unprofessional and unethical manner and has engaged in conduct that violated the Tennessee Rules of Professional Conduct, the Court must determine the appropriate disposition. In making this determination the Court considers the nature of the misconduct, Respondent's mental state or intent, the actual or potential injury caused by Respondent's misconduct, and the existence of aggravating and mitigating circumstances. The Court also considers Bell's misconduct and his post-conduct actions and compares that to other attorneys subjected to discipline by this Court.

The Court concludes that based upon Respondent's violations, disbarment and suspension are not warranted. Rather,

the Court concludes that the purposes of discipline, correction of the offending attorney, protection of the public, protection of the integrity and standards of the court and bar of this district, and deterrence to other attorneys, (*In re Moncier*, 2008 WL 3981491 *2–3 (E.D.Tenn. Aug. 22, 2008)), can be achieved by a public admonition.

Admittedly, Respondent's conduct, making false statements in a judicial proceeding is a serious act of professional misconduct. The system of justice cannot function if judges cannot rely upon the truthfulness of information provided to them. Respondent's witness Dan Smith affirmed this fundamental principle. Respondent, in his remarks before the Court, testified he adhered to this principle. As an officer of the court the obligation of candor on the part of members of the bar is even greater. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir.1993) ("As an officer of the court, every attorney has a duty to be completely honest in conducting litigation."); *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1245 n. 4 (11th Cir.2009) ("Membership in the bar is a privilege burdened with conditions. [A lawyer is] received into that ancient fellowship for something more than private gain. He [becomes] an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice.") (quoting *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470–71, 162 N.E. 487 (1928) (internal quotations omitted) (alterations in original)); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994) ("Every lawyer is an officer of the court. And ... he always has a duty of candor to the tribunal.").

However, for the following reasons, the Court deems a public admonition sufficient. Respondent's misconduct in making misrepresentation to Judge Shirley is aberrant conduct on his part. This was

isolated behavior and is out of character for him. As stated by Judge Shirley, Respondent's behavior "went against [Respondent's] prior reputation, history and nature." There is no history or pattern of unprofessional behavior or prior disciplinary offenses on Respondent's part. Accordingly, the Court judges the likelihood of reoccurrence to be minimal.

There was only one act of misconduct. Although the false statements were repeated, in essence it was the same statement given over time. Therefore the Court concludes this misconduct did not involve multiple offenses.

It is commendable and noteworthy that Respondent voluntarily brought to the Court's attention the conduct immediately after it became apparent his statements before Judge Shirley were incorrect and he regularly updated the Court on events taking place before Judge Shirley. By letter dated May 8, 2008, Respondent reported to the Court that Magistrate Judge Shirley had issued a Show Cause Order directing Respondent to show cause why he should not be held in criminal contempt. In this letter, Respondent stated he felt a professional obligation to notify the chief judge of the district of the institution of the contempt proceeding. On September 8, 2008, Respondent wrote another letter to the Court updating the Court on the status of the contempt proceedings. Finally, on August 21, 2009, Respondent again wrote to the Court. In this letter Respondent reported Judge Shirley had found him guilty of a Class C misdemeanor. He stated that he would not appeal Judge Shirley's ruling. Of special note are these words of Respondent: "In weighing the choices that I have, I reiterate what Judge Shirley said on page 31, 'By virtue of this occurrence and its publicity in the

bar and in the public, some may no longer accept him at his word or may now question his integrity and reliability.' I can tell you with some assurance that I believe that a lot of people may no longer accept me at may word or may now question my integrity and reliability. That hurts me more than the fine or any other punishment. I know that this finding by Judge Shirley will be a lifetime opportunity for others to challenge my word or question my integrity and reliability, whether it be in the courthouse, in my church, or in my community service." He related that he had written to inform the National Association of Criminal Defense Lawyer's Executive Committee, the American Board of Criminal Lawyers, his Session and Pastor and others, of Judge Shirley's ruling and that he was willing to resign from the positions of responsibility he held with these entities. He also stated a wish to do some things to eradicate the blemish the conviction caused.

Throughout the disciplinary process Respondent has been honest and truthful. He has not misrepresented the nature of the misconduct nor his actions before Judge Shirley. Rather, he has been forthcoming and repentant. He consistently updated the Court regarding the proceedings before Judge Shirley and informed the Court of actions he had taken to mitigate the effect of his actions on organizations with which he was associated.

There is nothing in Respondent's misstatements before Judge Shirley that demonstrates contempt for or disrespect to the court. Nor is there anything in Respondent's conduct during these disciplinary proceedings that demonstrates contempt for or disrespect to the Court.

 Respondent has exhibited heartfelt and genuine remorse.[3] He acknowledges

---

**3.** It is proper to take into account remorse in determining the presence or absence of ag-

gravating or mitigating factors. "[T]he Supreme Court has specifically recognized that

and recognizes his misconduct and its wrongful nature and he apologized for it, not only to Judge Shirley and the undersigned, but also to his church and to professional organizations to which he belongs.

Although discipline is necessary to uphold the integrity and standards of the court and bar of this district and to deter other attorneys from engaging in similar conduct, upon weighing the factors and circumstances of Respondent's offense, the Court determines a public admonition will suffice.

### III. CONCLUSION

The Court finds Respondent has engaged in unethical conduct and violated the Tennessee Rules of Professional Conduct. However, for the reasons stated above, the Court finds a public admonition is appropriate.

Accordingly, Respondent is publicly **ADMONISHED.** Additionally, he is **ORDERED** to offer to give lectures on ethics and civility to local bar associations and law schools in the state of Tennessee. He shall give ten lectures within the two-year period following the entry of this Order.[4] He shall file semiannual written reports with the Court, informing the Court of his efforts to comply with the Court's directive. The reports shall be due by the sixth month anniversary of the issuance of the ORDER, and each six months thereafter.

**SO ORDERED.**

---

remorse is relevant in attorney disciplinary proceedings." *In re Cook,* 551 F.3d at 551.

**4.** Respondent at his evidentiary hearing stated to the Court that ten lectures or talks within a two year time period was reasonable. Respondent said he enjoys speaking and that such a number would not be a burden.